**Elena CLASS et al.**

v.

**Nicholas NORTON, Successor to Henry C. White, Individually and as Commissioner of the State of Connecticut Welfare Department, et al.**

**Civ. No. 14764.**

United States District Court,
D. Connecticut.
March 22, 1974.

James C. Sturdevant, Tolland-Windham Legal Assistance Program, Willimantic, Conn., Marilyn Kaplan Katz, Bridgeport Legal Services, Bridgeport, Conn., for plaintiffs.

Edmund Walsh, Asst. Atty. Gen., of Conn., Hartford, Conn., for defendants.

## RULING ON PLAINTIFFS' MOTION FOR CONTEMPT AND OTHER RELIEF

BLUMENFELD, Chief Judge.

On June 16, 1972, a Memorandum of Decision in the instant case was filed ordering the defendant Connecticut Commissioner of Welfare to comply with applicable federal regulations by determining the eligibility of applicants for welfare assistance under the state program of Aid to Families with Dependent Children (AFDC) within 30 days from the date of application for assistance. If no determination of eligibility were made by the end of the 30-day period, the Commissioner was ordered to presume that the applicant was eligible for assistance and to mail assistance checks accordingly. The Commissioner was further ordered to make assistance effective from a date no later than the date of application for assistance, whatever the date of determination of eligibility. An Addendum to the Memorandum of Decision was filed on June 22, 1972, in which the Commissioner was further ordered to submit bi-monthly reports of the number of pending AFDC applications, including the number of applications which were pending for more than 30 days. The Addendum also specified that AFDC benefits retroactive to the date of application for all recipients whose applications were approved since the filing of this suit were to be paid only to the extent that emergency town welfare benefits received by the recipients were less than the AFDC benefits. The plaintiffs have now moved that the defendant Commissioner of Welfare be adjudged in contempt of this Court for failure to comply with this Court's orders of June 16 and June 22, 1972.

## I. THE EFFECTIVENESS OF THIS IMPLEMENTATION OF THIS COURT'S ORDERS OF JUNE 16 AND JUNE 22, 1972

The evidence introduced by the plaintiffs at the hearing on this motion and

submitted in the form of affidavits clearly demonstrates that this Court's orders of June 16 and June 22, 1972, have not been effectively implemented. Indeed, the defendants do not dispute this conclusion; rather, they maintain that they have taken all reasonable steps to implement this Court's orders within the practical limitations of existing budgetary and personnel constraints. While I am unwilling to. infer willful disobedience of this Court's orders on the part of the defendants, I am disturbed at the extent to which those orders have not been effectively inplemented. The evidence demonstrates that the non-compliance has been substantial and widespread. The Welfare Department's own bi-monthly reports indicate that during the period July 1972 through June 1973, substantial numbers of AFDC applications were not acted upon within 30 days, totaling 1,386 during the 12-month period. Applications pending longer than 30 days constituted a significant proportion of all applications pending at the end of each month, ranging in percentage from 29.6% to 12.3% and averaging 18.1%. There has apparently been some progress in processing of applications, since the number of applications pending longer than 30 days has decreased somewhat in recent months. However, the plaintiffs have submitted affidavits of welfare recipients indicating that delays of 40 days and more have occurred with no final determination of eligibility. In some instances applicants for assistance were not even given appointments with welfare workers at which applications could be completed until more than 30 days after their initial requests for assistance.

Moreover, the plaintiffs have submitted affidavits indicating that at least in some cases the Welfare Department has refused, in making retroactive payments, to make assistance effective from the date of application for assistance.

These recipients have been fortunate in receiving the assistance of Legal Services counsel; the Court can only speculate about the number of people who lost benefits to which they were entitled for failure to challenge the improper actions of the Welfare Department.

There appear to be several factors contributing to the ineffective implementation of this Court's orders. At the hearing on this motion, Anthony DiNallo, Assistant Chief of Eligibility Services of the Connecticut Welfare Department, and John J. Hayes, District Supervisor of Intake in the Manchester District Office of the State Welfare Department, both indicated in their testimony that delays in paying retroactive benefits and in processing pending applications could be traced to a lack of sufficient numbers of office personnel.[1] In the order of June 16, 1972, however, it was stated, "Lax administration provides no justification for this delay in determining eligibility." The point is no less true now: non-compliance with this Court's orders will not be excused because the Welfare Department has failed to assign sufficient personnel to the task. No departmental economies are realized by maintaining a backlog of unfinished work—only unjustified delay in the completion of it. And this is clearly to the detriment of the intended beneficiaries. Furthermore, it results in greater out-of-pocket cost to the state because the reimbursement to towns for assistance they provide is not shared by the federal government under the federally-funded state welfare plan. It is obvious that the sooner town assistance is supplanted by federally-shared assistance, the less the drain on the state's funds.

---

1. Mr. DiNallo testified that determinations of eligibility for retroactive payments in currently *active* cases could be done quickly, since the records are computerized. Eligibility determinations for *inactive* cases, however, would take a considerable amount of time, since the records are not computerized and the review process requires hand-screening of approximately 160,000 status cards on all categories of welfare recipients.

A second factor contributing to the ineffective implementation of this Court's orders appears to be the specific procedures utilized by local offices of the State Welfare Department in processing applications for assistance, a factor which may be attributed to a misunderstanding of the requirements of this Court's orders on the part of Welfare Department personnel. The plaintiffs submitted affidavits indicating that in the Bridgeport office of the State Welfare Department two weeks is the average period of time between an applicant's initial request for assistance and the date of appointment with a welfare worker at which time the application could be completed. This two-week period is purportedly not due to failure of the applicant to furnish necessary information, but rather for "administrative convenience." After the application is completed, the welfare worker must verify the information given, fill out other required forms, and secure the approval of eligibility from a supervisor, a process which generally takes another two weeks. After approval by the supervisor, further processing by the Welfare Department consumes another two weeks before the first assistance check is mailed to the applicant. This six-week period between initial application and mailing of first AFDC checks is at odds with both the spirit and letter of this Court's prior orders. There is some indication that the local supervisor erroneously believes that the 30-day requirement only applies to the period between initial application for assistance and approval of eligibility by the supervisor. The supervisor thus believes his office to be in compliance with this Court's prior orders. He is mistaken. The order of June 16, 1972, makes it clear that the 30-day period is to be measured from the date of application for assistance to the date that the first assistance check (or notification of denial of assistance) is mailed to the applicant.

The apparent misunderstanding of this Court's prior orders has been exacerbated by the promulgation of two directives by the Welfare Department, on May 4, 1973, and on December 4, 1973. The May 4 directive provides that in the case of retroactive payments to a recipient who did not receive emergency town assistance, where the retroactive check exceeds the amount budgeted for the current month in addition to one previous month, prior authorization must be secured from the district director. The district director will provide such authorization only when the Intake Worker has *verified and recorded* "that need did, in fact, exist, specifying clearly what the unmet needs were: e. g., shelter, utilities, food, etc." The directive further provides that where recipients did receive emergency town assistance, if, after deducting the amount of town assistance, the payment exceeded $250, it must be verified and clearly specified "what the recipient's unmet needs were and what period of time they cover . . . ." The directive dated December 4, 1973, attempted to clarify the earlier directive by stating that "a client should be notified that for *30 days* within receipt of a retroactive check, the amount over $250 will not be considered an asset. After thirty days, however, if the recipient retains money in excess of $250, he will be ineligible until he disposes of the excess amount."

The plaintiffs claim that these directives establish a policy whereby the Welfare Department absolutely denies retroactive payments to recipients absent proof of "unmet need" and arbitrarily limits the amount of retroactive payments to $250 for those who received emergency town assistance, absent proof of unmet need. They claim that this policy is in "direct defiance" of this Court's prior orders.

The defendant Commissioner of Welfare maintains that the requirement of verification of unmet needs carries out the duty imposed upon him by the Social Security Act, which requires that ". . . the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to

families with dependent children . . . ." 42 U.S.C. § 602(a)(7). The Commissioner claims that the limitation amount of $250 is justified as a means of insuring that recipients properly meet welfare eligibility standards. The Assistant Attorney General representing the Commissioner conceded at the hearing on this motion that if the Welfare Department directives were interpreted by Department personnel as putting the burden upon the *recipient* to justify retroactive payments by demonstrating "unmet need," then Department policy would be violative of this Court's prior orders.

Efforts by the Commissioner to comply with the legal mandate imposed by the Social Security Act are, of course, justified and commendable. However, the affidavits and exhibits submitted by the plaintiffs indicate that even where a fair hearing officer recognized that there was unreasonable delay by the Department in determining eligibility, he nevertheless denied retroactive payments because "unmet needs" had not been demonstrated by the recipient. Thus at least some Department personnel have interpreted Department policy as placing the burden on the recipient to justify the retroactive payments.[2]

Insofar as they place a burden upon the recipient to justify the retroactive payments by demonstrating "unmet need" during the pendency of the application, the directives are violative of this Court's prior orders. If someone else without legal obligation to do so provides some assistance to prevent an applicant from starving, that is irrelevant to the defendant's obligation to provide assistance statutorily mandated. The Court notes that the requirements imposed upon the Commissioner by the Social Security Act with respect to proper determinations of eligibility may be

carried out by enforcement of the appropriate state statutes, *i. e.*, Conn.Gen. Stats. § 17–82d, under which the Commissioner makes periodic investigations to monitor eligibility, and Conn.Gen. Stats. §§ 17–82m and 17–83i, which provide for civil actions to recover overpayments and for criminal prosecutions for fraud in obtaining welfare assistance, and by proper implementation of the provisions of the Welfare Department Manual relating to adjustments and reviews of recipients' eligibility, Manual, Vol. I, Ch. III, Index No. 2330. Moreover, the plaintiffs' argument that imposition of a fixed dollar amount limiting retroactive payments constitutes a disincentive to the Department to process eligibility applications speedily is well taken. Without imputing any deliberate design to circumvent this Court's orders to Department personnel, it is nevertheless evident that a $250 limit on retroactive payments following delay in processing applications is likely to have this effect. In view of these circumstances, it is apparent that a clear statement of the Department's policy with respect to retroactive payments is presently needed.

## II. RELIEF

Although the failure of compliance with this Court's prior orders on the part of the Department appears to have been substantial, I have concluded that the drastic remedies which plaintiffs seek—citation of the defendant Commissioner for contempt and issuance of an injunction preventing use of federal funds for the AFDC program in Connecticut—would be inappropriate in the circumstances of this case at this time. *Compare* Rosado v. Wyman, 397 U.S. 397, 420–423, 90 S.Ct. 1207, 25 L.Ed.2d 442 on remand 322 F.Supp. 1173, 1196 (E.D.N.Y.), aff'd 437 F.2d 619 (2d Cir.

---

2. The fair hearing decision in one particular case noted by plaintiffs was rendered on April 4, 1973, before the Department's directives were issued. It is not clear, however, that the departmental policy of requiring verification of "unmet needs" was not in effect before the directives were issued, and correspondence submitted by the plaintiffs indicates that the problem in that particular case had not been resolved, and the recipient had not received retroactive payments, as late as November 27, 1973.

1970), aff'd 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971); Connecticut St. Dept. of Pub. W. v. Department of H.E. W., 448 F.2d 209 (2d Cir. 1971). It appears that much of the failure of compliance may have been the result of good faith attempts on the part of Department personnel to implement policies which were not sufficiently clarified by Department administrators. Nevertheless, continued non-compliance cannot and will not be tolerated, and I find it necessary to draw on the "broad discretionary power" of the trial court to fashion equitable remedies which are "a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973) (footnote omitted). Accordingly, within 15 days of the date of this order, the defendants are ordered to take the following steps to properly implement the prior orders of this Court:

(1) With respect to *inactive* cases involving persons who applied for AFDC benefits after December 1, 1971, the defendants shall assign at least four full-time office workers, in addition to any presently so assigned, to review Department records in order to determine whether such former recipients are currently eligible for retroactive welfare payments and to provide for the payment of such retroactive benefits. The defendant Commissioner shall submit monthly reports to this Court, with copies to counsel for the plaintiffs, specifying the number of such inactive cases which were reviewed by Department personnel during the prior 30 days in efforts to determine eligibility for retroactive payments, the number of persons who were found to be eligible for retroactive payments, and the number of such persons who were paid retroactive payments by the Department during the prior 30 days.

(2) With respect to *active* cases involving persons who applied for AFDC benefits after December 1, 1971, the defendants shall immediately institute procedures by which Department records may be reviewed in order to determine whether such current recipients are eligible for retroactive welfare payments and shall provide for the payment of such retroactive benefits. Since these records are computerized, it is anticipated that the information may be readily obtained and the payments speedily made. Accordingly, the defendant Commissioner shall submit a report to this Court within 45 days of the date of this order, and shall submit a copy of such report to counsel for the plaintiffs, specifying the number of such active cases which were reviewed by the Department, the number of persons who were found to be eligible for retroactive payments, and the number of such persons who were paid retroactive payments by the Department.

(3) The defendant Commissioner shall issue a new directive to all Department personnel, with copies to counsel for plaintiffs, regarding retroactive payments and processing of AFDC applications. The directive shall state the following:

(a) Determinations of eligibility of AFDC applicants shall be made within 30 days from the date of application for assistance. This 30-day period is to be measured from the date of application for assistance, whether such application was made by telephone or in person in a Welfare Department office. It is *not* sufficient that applications are approved by district supervisors within 30 days: processing of applications is to be completed at district offices in

time so that applications may be forwarded for final approval and checks may be *mailed* within 30 days.

(b) If no determination of eligibility is made within 30 days, applicants are to be presumed eligible for assistance and AFDC checks are to be mailed accordingly, *i. e.*, at the end of the 30-day period. Assistance is to be effective from the date of initial application for assistance, whatever the date of determination of eligibility, and regardless of whether the initial application was by telephone or in person. For recipients who received emergency town assistance during the pendency of the AFDC applications, AFDC benefits retroactive to the date of application are to be paid only to the extent that such AFDC benefits exceed the amount of emergency town assistance benefits paid.

(c) The Department directives of May 4, 1973, and December 4, 1973, are hereby rescinded insofar as they place a burden upon a welfare recipient to demonstrate "unmet need" in order to receive retroactive AFDC payments or impose a specific dollar limitation on the amount of such retroactive payments. In no case shall any employee of the Department require proof of "unmet need" for an AFDC recipient before authorizing retroactive payments, whether or not the recipient received emergency town assistance during the pendency of the recipient's AFDC application, and regardless of the amount of such retroactive payments.

In addition, the defendant Commissioner shall submit monthly reports to this Court, with copies to counsel for the plaintiffs, detailing the processing of AFDC applications. The first such report shall be submitted not later than May 10, 1974, covering the month of April 1974, and the defendant Commissioner shall continue to submit such reports monthly until further order of this Court. Such reports shall include the following information for each district office and for the state as a whole:

a. The number of applications brought forward from preceding months, the number received during the month and the total of the two, *i. e.*, the number on hand during the month;

b. The number of applications approved during the month, the number denied, the number transferred out and the total number of dispositions during the month;

c. The per cent of applications disposed of within the time period (30 days);

d. The number of applications pending less than 30 days at the end of the month, the number pending 30 through 45 days, the number pending 45 through 60 days, the number pending more than 60 days, and the total of the four, *i. e.*, the total number of applications pending at the end of the month;

e. The number and per cent of applications presumed eligible after failure to process in less than 30 days during the month; and

f. The number and per cent of applications pending over 30 days due to failure of the applicant or the applicant's physician to submit the information required to establish eligibility during the month.

Plaintiffs' counsel have expended considerable effort in this case in presenting the legal issues and relevant evidence to this Court. They have diligently sought to protect the rights of their clients in the face of unjustified noncompliance with this Court's prior orders on the part of the defendants. The Court finds that the value of the time necessarily expended by the attorneys for the plaintiffs is in excess of $1,000. Accordingly, within 15 days from the date of this order, the defendant Norton

shall, as Commissioner of Welfare for the State of Connecticut, and in his individual capacity, pay costs, and attorneys' fees for the prosecution of this motion in the amount of $1,000 to Fairfield County Legal Services, Inc., and Tolland-Windham Legal Assistance Program, Inc., plaintiffs' attorneys, such amount to be divided equally between the two legal services programs. Doe v. Weaver, No. 70–C–3084 (N.D.Ill., October 11, 1972, December 14, 1972); Sprague v. Ticonic Bank, 307 U.S. 161, 164–166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Hall v. Cole, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). *Cf.* Stanford Daily v. Zurcher, 366 F.Supp. 18 (N.D.Cal.1973); Almenares v. Lavine, 71 Civ. 3503 (S.D.N.Y. Nov. 29, 1973), C.C.H.Pov.L.Rptr. ¶ 18,317.

So ordered.