**Elena CLASS et al., Plaintiffs-Appellees,**

**v.**

**Nicholas NORTON et al., Defendants-Appellants.**

**No. 138, Docket 74–1702.**

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1974.

Decided Oct. 10, 1974.

**124**

Edmund C. Walsh, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., State of Conn., Hartford, Conn.), for defendants-appellants.

James C. Sturdevant, Tolland-Windham Legal Assistance, Inc., Rockville, Conn., Marilyn Katz, Fairfield County Legal Services, Inc., Bridgeport, Conn., for plaintiffs-appellees.

Armand Derfner, Charleston, S. C. (Epstein & McClain, Charleston, S. C.), J. Harold Flannery, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., and Martha G. Bannerman, New York City, on the brief for Lawyers' Committee for Civil Rights Under Law, as amicus curiae.

Before SMITH, TIMBERS and GURFEIN,* Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Nicholas Norton, Commissioner of Welfare for Connecticut, appeals from the ruling on a motion for contempt rendered by then Chief Judge M. Joseph Blumenfeld of the District of Connecticut on March 22, 1974. 376 F.Supp. 496. The court declined to hold appellant in contempt for his alleged failure to comply with orders entered in 1972 calling for timely processing of applications for welfare assistance under the state program of Aid to Families with Dependent Children (AFDC). 42 U.S.C. § 601 et seq.; 45 C.F.R. § 206.10. The court did find significant non-compliance with its prior orders, however, and accordingly: reaffirmed its earlier relief; required that the appellant undertake specified additional measures to ensure compliance with the orders in the future; and assessed a liability of $1,000 against the appellant, in both his individual and official capacities, to cover the appellees' attorneys' fees and costs in bringing the contempt charges. With the exception of the assessment of individual liability, we affirm.

In December, 1971, the appellees, AFDC applicants and recipients, brought a class action against the Connecticut State Welfare Commissioner to compel compliance with federal AFDC regulations requiring a determination of applicant eligibility for assistance within 30 days of making application. Judge Blumenfeld's two orders granting the plaintiffs relief basically required: processing of applications within the 30-day limit; providing assistance to all applicants whose eligibility is not determined within this period; making retroactive payments to eligible persons dating from the date of their application; and issuing bimonthly reports on the number of applications not timely processed. The defendant Commissioner did not appeal from this order.

---

* At the time of oral argument, Judge Gurfein was a United States District Judge for the Southern District of New York, sitting by designation.

In January, 1974, the appellees initiated the contempt proceeding presently under review, alleging that the appellant had failed to comply satisfactorily with the terms of the orders. Finding "substantial and widespread" non-compliance, 376 F.Supp. at 498, the court eschewed the requested contempt sanctions in favor of a detailed implementation plan designed to eliminate possible sources of continued non-compliance, *id.* at 501–502. The court accompanied these prophylactic directives, moreover, with a reiteration of its earlier orders. Finally, commending appellees' counsel for their persistence "in the face of unjustified non-compliance with this Court's prior orders," *id.* at 502, Judge Blumenfeld awarded $1,000 for counsels' fees and costs to the movants; liability for this amount was found against the Commissioner in his official and individual capacities.

The appellant does not take issue with the prospective relief granted by the court. He does question the validity of the $1,000 award against him as well as the court's reaffirmation of its 1972 order to pay retroactive benefits (to date of application) to applicants determined eligible for assistance between the dates of plaintiffs' filing the initial claim and the court's rendering judgment on it.

## I. RETROACTIVE PAYMENTS

■ The appellant seizes upon the recently decided case of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974), as a basis for overturning Judge Blumenfeld's ruling with regard to retroactive payments. In *Edelman,* the Supreme Court held that a federal court order requiring state officials to pay retroactive benefits ran afoul of the Eleventh Amendment. Although *Edelman* does figure prominently in the resolution of this appeal, *see* II *infra,* we need not consider its force in the context of the retroactive payment order: the validity of the order is settled by the appellant's failure to make a timely appeal of this order when rendered in June, 1972. The doctrine of

*res judicata,* therefore, bars the appellant from securing review of the payment order in this appeal from a proceeding collateral to that one determinative of the merits of the order.

In Federal Trade Commission v. Minneapolis-Honeywell Co., 344 U.S. 206, 211–212, 73 S.Ct. 245, 248, 97 L.Ed. 245 (1952), the Supreme Court elaborated on this principle of finality:

Thus, the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality. [footnotes omitted]

Having allowed the time for a direct appeal of the 1972 order to expire, the Commissioner may not relitigate the substance of that order merely because the court, in its 1974 ruling, saw fit to reiterate that prior order. The 1974 ruling in no sense altered the earlier payment order. *See also* Oriel v. Russell, 278 U.S. 358, 363, 49 S.Ct. 173, 73 L.Ed. 419 (1929); National Labor Relations Board v. Local 282, International Brotherhood of Teamsters, 428 F.2d 994, 999 (2d Cir. 1970).

We do not comment on the merits of the appellant's contention were it now properly before this court. *See,* United States .v. Secor, 476 F.2d 766, 770 (2d Cir. 1973). The efficient and fair administration of justice requires that litigation of an issue at some point come to an end. And for the appellant, who has had one opportunity already to contest the payment order, the time to relitigate that issue has necessarily run.

## II. THE AWARD OF COSTS AND ATTORNEYS' FEES

The Eleventh Amendment to the Constitution, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," relates only to the appellant's liability in his official capacity as an agent of the State of Connecticut. *See,* Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); Moor v. County of Alameda, 411 U.S. 693, 700, 93 S.Ct. 1785, 36 L. Ed.2d 596 (1973). Considerations peculiar to official liability raised by the Eleventh Amendment, therefore—or, more particularly by the Eleventh Amendment as recently construed in Edelman v. Jordan, *supra*—indicate the appropriateness of analyzing separately the official and personal liabilities imposed by the court on the Commissioner. The two forms of liability must also be distinguished in terms of the degree of recalcitrance warranting their imposition.

### A. *Liability of Appellant in his Official Capacity*

The appellant contends that *Edelman's* proscription against federal courts ordering state officials to pay retroactive benefits immunizes him from liability to the appellees as an agent of the state. He seeks to characterize the $1,000 assessed against him for attorneys' fees and costs as an award akin to retroactive benefits—a drain on the state treasury to compensate for alleged official improprieties in the past.

The district court made this award incident to granting prospective relief: a multiple injunctive order to issue certain regulations, withdraw specified departmental directives, and make designated reports. Of critical importance, then, is the discussion in *Edelman, supra,* 415 U.S. 651 at 667–668, 94 S.Ct. 1347, at 1357–1358, of "ancillary effects" on the state treasury deriving from compliance with prospective orders of a federal court:

> But the fiscal consequences to state treasuries in these cases [Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970)] were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in Ex parte Young, *supra.*

We have recently commented on the applicability of this "ancillary effect" exception to an award of attorneys' fees:

> Moreover, it appears to us that the allowance [of attorneys' fees] awarded here, as part of an order granting injunctive relief, has at most the "ancillary effect on the state treasury," which Edelman v. Jordan, *supra,* 415 U.S. 651 at 668, 94 S.Ct. 1347 at 1358, 39 L.Ed.2d 662 characterizes as a "permissible and often inevitable consequence of the principle announced in Ex parte Young, . . . "

Jordan v. Fusari, 496 F.2d 646, 651 (2d Cir. 1974). Admittedly, that statement was not necessary to our holding in Jordan v. Fusari, because we had already held *Edelman* inapplicable by reason of the state's Eleventh Amendment waiver in making a settlement for retroactive unemployment benefits. Nonetheless, we are no less persuaded of this position when squarely presented with the issue today. We reaffirm our statement in Jordan v. Fusari, *supra,* and extend its application to include an award of costs, which in this context is analytically indistinguishable from one of attorneys' fees.

In finding that the Eleventh Amendment does not immunize the Commissioner from liability in his official capacity, we underline the forward-looking, deterrent nature of this award. Indeed, even without regard to the "ancillary effect" exception of *Edelman*, we would have no difficulty reconciling the award with the retrospective thrust of *Edelman* as a "necessary result of attempts to gain compliance with a decree which by its terms was prospective in nature." Rodriguez v. Swank, 496 F.2d 1110, 1113 (7th Cir. 1974) (affirming a lower court order that the state pay $100 to any AFDC applicant whose application is not timely processed in the future.)

Once the state immunity issue is resolved against the appellant, the step to affirming his official liability follows easily. For although the award of costs and attorneys' fees against a defendant may be an extraordinary measure, it is warranted where " 'bringing of the action should have been unnecessary and was compelled by : . . unreasonable, obdurate obstinacy.' " Stolberg v. Members of the Board of Trustees for the State Colleges of the State of Connecticut, 474 F.2d 485, 490 (2d Cir. 1973), *quoting* Bradley v. School Board of City of Richmond, 345 F.2d 310, 321 (4th Cir.), vacated on other grounds, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965). Moreover, insofar as this standard for awarding costs and attorneys' fees[1] has been assimilated to bad faith, Hall v. Cole, 412 U.S. 1, 5, 93 S. Ct. 1943, 36 L.Ed.2d 702 (1973); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (*per curiam*), the evidence marshaled by the court sufficiently supports such a finding.

The award of costs and attorneys' fees against the Commissioner in his official capacity was thus an act neither in conflict with the Eleventh Amendment nor outside the court's sound discretion as a court of equity.

B. *Liability of Appellant in his Individual Capacity*

Although possible Eleventh Amendment immunity does not bear on the appellant's individual liability for attorneys' fees and costs, he does enjoy the qualified immunity traditionally accorded executive officers. *See,* Scheuer v. Rhodes, *supra,* 416 U.S. at 246–249, 94 S.Ct. at 1692–1693; Barr v. Matteo, 360 U.S. 564, 569–574, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (plurality opinion of Harlan, J.); Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949). Since this immunity varies in breadth with the "scope of discretion and responsibilities of the office," Scheuer v. Rhodes, *supra,* 416 U.S. at 247, 94 S.Ct. at 1692, the appellant-Commissioner, one vested with considerable policy-making powers, is cloaked in his individual capacity with a broad immunity for honest mistake.

Proof of bad faith ordinarily suffices to justify an assessment of attorneys' fees and costs against a defendant. *See,* A, *supra.* Where the defendant is insulated from liability by a qualified executive immunity of the scope witnessed here, however, "bad faith" alone in the sense used here as illuminated by the facts found would not appear to be enough. In the absence of malice or a clear abuse of discretion, this punitive award does not lie against

---

[1]. An award on this basis essentially rests on a punitive rationale. Similar awards have been justified as shifting the costs of litigation from a plaintiff benefiting the members of the body which he is suing as an entity. *See, e. g.,* Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Alternatively a private attorney general theory for making such an award has received approbation where the litigant "(1) furthers the interests of a significant class of persons by (2) effectuating a strong congressional policy." Brandenburger v. Thompson, 494 F.2d 885, 888 (9th Cir. 1974). *See also,* Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.) (three-judge court), aff'd mem. 409 U.S. 942, 93 S. Ct. 290, 34 L.Ed.2d 215 (1972).

the Commissioner. *Cf.* Jordan v. Weaver, 472 F.2d 985, 999 (7th Cir. 1973), rev'd on other grounds, sub nom. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

In the light of the court's findings, this award against the appellant personally must be reversed. The court specifically declined to infer "willful disobedience" of its prior order, 376 F.Supp. at 498, or any "deliberate design" to nullify that order, *id.* at 500. In addition, "much of the failure of compliance" could be attributed to insufficient clarification of department policies, *id.* at 501—a lamentable state of affairs to be sure, but hardly the stuff of which a case for malice or abuse of discretion may be made. Thus, without in any way condoning the appellant's conduct in failing properly to implement the court's order, we find ourselves unable to agree with the court below that his conduct was sufficiently reprehensible to warrant assessing $1,000 against him individually. On this issue alone, we reverse.

Reversed as to award against the Commissioner individually. Otherwise affirmed.