707 F.2d 780
 2 Soc.Sec.Rep.Ser. 98
 Clara ALEXANDER, Carmen Nelson, Etter Hilton and Sarah
Williams, individually and on behalf of all others
similarly situated; Henry J. Conner, Appellees,
v.
Renee HILL, Director, Division Social Services, North
Carolina State Department of Human Resources; James F.
Richardson, Mecklenburg County Board of Social Services;
Edwin H. Chaplin, Director, Mecklenburg County Department of
Social Services, Appellants.
 No. 83-1088.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 1, 1983.
Decided May 5, 1983.
 
 William Woodward Webb, Steven Mansfield Shaber, Asst. Attys. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellants.
 Theodore O. Fillette, III, Legal Services of Southern Piedmont, Inc., Charlotte, N.C. (Pam Silberman, Legal Services of Southern Piedmont, Inc., Charlotte, N.C., on brief), for appellees.
 Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 In August 1974 plaintiffs sued North Carolina State and County administrators to compel them to correct a situation in which benefits under the Medicaid and the Aid for Dependent Children programs were delayed beyond elapsed time limits established by applicable federal regulations.[1]
 
 
 2
 It is not necessary that we here spell out the tangled web which has confronted the plaintiffs. It suffices to observe that in 1983, over eight years since their case was brought, North Carolina's Secretary of Human Resources and Director of Social Services have not yet brought the AFDC and Medicaid programs into full compliance with the time limits called for in the regulations. On record evidence supporting them,[2] the district judge made findings as follows:
 
 
 3
 * * *
 
 
 4
 * * *
 
 
 5
 3. Mecklenburg County has shown a consistent pattern of non-compliance ....
 
 
 6
 4. Both Wake and Stokes Counties submitted inaccurate monthly reports ....
 
 
 7
 5. In the counties investigated by plaintiffs, defendants improperly classified as overdue with "good cause" cases [improperly so classified] ....
 
 
 8
 6. ....
 
 
 9
 The court finds that plaintiffs' investigation raises questions about the accuracy of defendants' monthly reports state-wide....
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 8. In summary of the above findings, the court finds that while defendants have made some progress in the eight years since this action commenced, they have still seriously failed to comply with their obligations under federal law and this court's orders.
 
 
 13
 The district court, 549 F.Supp. 1355, concluded as a matter of law that there had been widespread failure by the defendants to comply with previous orders entered in the proceeding. The court specifically mentioned submission by the defendants of inaccurate monthly reports and the defendants' improper classification of applications as overdue with good cause. The district judge further faulted defendants' practice of delaying decision on Medicaid applications beyond 60 days in order to adopt Social Security disability determinations in violation of federal regulations and previous orders of the court.
 
 
 14
 In structuring a remedy the court provided:
 
 
 15
 That in view of defendants' protracted noncompliance with previous court orders, but principally to insure future compliance, defendants are ordered to pay each applicant who is determined to be eligible for AFDC or Medicaid a remedial fine of fifty dollars ($50.00) for each week or fraction thereof that his or her application was delayed beyond the relevant time limit without "good cause." Defendants will be given ninety (90) days from the date of this order to bring the county departments into compliance with federal law and the terms of this order. At the end of ninety (90) days, defendants are ordered to send each applicant who is sent an initial AFDC check or favorable Medicaid notice of decision a separate check in the amount required by the terms of this paragraph. A decision by defendants that an applicant is not entitled to payment provided for by this paragraph shall be subject to the statutory appeals procedure. See N.C.G.S. Sec. 108A-79.
 
 
 16
 That any money paid to an applicant as a result of this order shall not be recoverable by defendants. Nor shall the money paid to a successful applicant be treated as income or reserve for the purpose of determining public assistance eligibility or benefit levels.
 
 
 17
 I. The Absence of a Finding of Contempt or Bad Faith as Precluding the Imposition of a Remedial Fine
 
 
 18
 On appeal, the defendants first have contended that the district court lacked authority to impose remedial fines or penalties absent a finding of contempt or bad faith. However, words are possessed of no magical properties, incantations should not decide cases, and the lack of a finding of contempt or of bad faith should not preclude exercise of inherent equitable powers to achieve fair remedial results. Smith v. Miller, 665 F.2d 172, 175 (7th Cir.1981) ("As the Department points to no explicit provision within the Act and no ground in the Constitution which restricts the district court's authority to award equitable relief, the district court had authority to exercise its full powers of equity to effectuate the purposes of the Act."); Class v. Norton, 505 F.2d 123, 125 (2d Cir.1974) ("... the court eschewed the requested contempt sanctions in favor of a detailed implementation plan designed to eliminate possible sources of continued non-compliance ..."); cf. Rodriguez v. Swank, 496 F.2d 1110 (7th Cir.1974) (action by the district court substantially identical to Judge McMillan's in the instant case was denominated on appeal a civil contempt order, although the opinion contains no indication that a finding of contempt had been made in the district court).[3] The court is invested with broad equitable powers and simply should not be compelled to operate in a punishment or nothing atmosphere. Alleviation rather than sanction was properly the goal on which the district court concentrated its attention.
 
 
 19
 II. The Eleventh Amendment to the Federal Constitution as a Bar to the Awards of Remedial Fines
 
 
 20
 The defendants assert that the district court's contingent remedy is barred by the Eleventh Amendment provision:
 
 
 21
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens ....
 
 
 22
 We need not elaborate on the history of the interpretation accorded to that Amendment, and its long-standing record of meaning something different--or at least more extensive--than what it seems to state. The crucial consideration is simply that the remedial awards are entirely prospective. They are contingent upon what happens in the future. The defendants were accorded 90 days from the date of the district court's order in which to bring their practices into compliance with the governing regulations. Had they succeeded in doing so, no remedial fines would have ever been payable. Any remedial fines that might now be paid are strictly in futuro dating from February 4, 1983, 90 days after the district court's order.
 
 
 23
 Had the award been retrospective in character then we would have been presented with a very different case under the Eleventh Amendment. Cf. Edelman v. Jordan, 415 U.S. 651, 665, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). However, the Supreme Court in Edelman makes clear that only retroactive monetary relief is prohibited by the Eleventh Amendment and that prospective relief does not violate the Amendment, even though it has a significant "ancillary effect on the state treasury." Id. at 667-68, 94 S.Ct. at 1358.
 
 
 24
 The distinction between prospective and retrospective relief is further refined in Milliken v. Bradley, 433 U.S. 267, 289-90, 97 S.Ct. 2749, 2761-62, 53 L.Ed.2d 745 (1977) (approving a decree requiring the State "to share the future costs" of the relief imposed, the Supreme Court approved action by the "federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.... That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment") (emphasis in original).
 
 
 25
 III. The Requirement of 100% Compliance with the Federal Regulations
 
 
 26
 The defendants' objection to the 100% applicability of the relief ordered, based on a claim that it is too Draconian, need not long detain us. The district court had wide discretion in fashioning a remedy which would achieve compliance with the law. The law itself compels 100% compliance. See, e.g., 42 U.S.C. Sec. 602 ("aid to families with dependent children shall ... be furnished with reasonable promptness to all eligible individuals"). The district court did not abuse its discretion when it required full compliance with the law and imposed a sanction for any failure to comply. We all are expected to abide fully by the law, and expose ourselves to sanctions whenever we fail to do so.
 
 
 27
 IV. Possible Penalties or Other Undesirable Results from the Court's Ban on Taking into Account the Remedial Fines in Determining Eligibility or Benefit Levels under Public Assistance Programs
 
 
 28
 A. Appellants seek to utilize a letter dated February 1, 1983[4] from the United States Secretary of Health and Human Services, Richard S. Schweiker, to counsel for the Appellants to suggest collateral detrimental effects to them which will flow from the portion of the order forbidding the calculation of public assistance eligibility by treating as an asset any remedial fine paid to an AFDC or Medicaid beneficiary who has been subjected to an unwarranted delay in the processing of his or her application for benefits. In the first place it remains for future determination whether any remedial fines will in fact be paid. An objective of the district court order is to obtain compliance with applicable federal regulations, and we do not lightly assume that the order will not have the desired effect. Second, the federal regulations to which Mr. Schweiker's letter was directed, 45 C.F.R. Sec. 233.20; 42 C.F.R. Sec. 435, Subparts H and I, were written with attention focused on other matters than remedial orders of the type here involved, which have been imposed by the judiciary. Courts may tailor their orders to obtain the desired effect without being frustrated by federal regulations promulgated with other purposes in mind. It remains for future determination in another law suit whether the remedial, court-ordered fines will be deemed to trigger those federal regulations.[5] 5] Moreover, Judge McMillan is not precluded from considering modification of his order should the regulations in fact be subsequently interpreted to be in conflict with that portion of his order. Third, Mr. Schweiker himself points to the availability of waivers of any penalties under the applicable regulations where the state has made a "good faith effort." It is, therefore, entirely possible that North Carolina and its counties, by a display of good faith, even if they do not escape all remedial fines, may qualify for and receive waivers under the federal regulations from which they otherwise fear the imposition of penalties.
 
 
 29
 Finally, the restriction appearing in the order may well be essential to its efficacy. Obviously if the remedial fines imposed to insure future compliance are subject to the state's taking away with one hand what it has been forced to give with the other, the effectiveness of the remedy will have been diluted or, indeed, will have almost entirely evaporated.
 
 
 30
 B. Furthermore, Appellants protest the extension of the ban on use of remedial fines to compute public assistance eligibility to other programs than AFDC and Medicaid. Superficially, the argument has some appeal, since, as the case has evolved, it has restricted itself solely to consideration of AFDC and Medicaid benefits. However, the State administers and at least partially funds all other public assistance programs. Indeed, the same state defendants also administer the Food Stamps and Energy Assistance programs. By imposing the condition, the district court was protecting the order against dilution and consequent diminution of its remedial effectiveness. The order does not, in any way, interfere with the administration of public assistance programs other than Medicaid and AFDC, serving only to prevent the State from converting a Medicaid or AFDC benefit into a dollar loss to recipients under other public assistance programs.
 
 
 31
 Accordingly, for the reasons heretofore given, the judgment of the district court is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Applications are to be processed within 45 days of filing or, where disability is claimed, within 60 days. 42 C.F.R. Sec. 435.911; 45 C.F.R. Sec. 206.10(a)(3)
 The regulations further require a state to supervise administration of the AFDC and Medicaid programs and to insure that the counties process applications in a timely fashion. 42 C.F.R. Sec. 435.904; 45 C.F.R. Secs. 205.120, 206.10(a)(12).
 
 
 [2]
 The defendants have not challenged any of the district court's findings; nor have they moved for any amendment of the substantive findings
 
 
 [3]
 Indeed, in Class v. Norton, the relief awarded was far more extensive than here, for the State Commissioner of Welfare was in Class v. Norton ordered to mail assistance checks to every applicant upon the expiration of the applicable period (then 30 days) without completion of processing and, in that connection, to find presumptively eligible all applicants whose applications had not been processed within the requisite period. The order in the instant case restricts relief to those in fact determined to be eligible for benefits. In Smith v. Miller, the Seventh Circuit approved a provision in the order that all untimely processed applications should be automatically approved
 The district judge here further excepted applicants whose applications took more than 45 days or 60 days to process for "good cause."
 
 
 [4]
 The letter was written during the pendency of the appeal, after the record was complete
 
 
 [5]
 We do not accept as controlling an observation by a fellow administrative official, designed to assist a party to litigation, to the effect that "I understand that under current policy the payments required by the Court's Order in Alexander v. Hill would be considered income or resources for purposes of eligibility determination." The observation is just that. It cites no authority, merely purporting to rely on "consultation with the Office of the General Counsel and review by the relevant program officials."