**G.L., An Infant, by and through his Next Friend, et al., Plaintiffs,**

v.

**John ZUMWALT, et al., Defendants.**

**No. 77–0242–CV–W–4–JWO.**

United States District Court, W.D. Missouri, W.D.

Feb. 20, 1990.

See also, D.C., 564 F.Supp. 1030.

Fred Rich, Legal Aid of Western Missouri, Kansas City, Mo., and Christopher A. Hansen and Jeffrey B. Gracer, Children's Rights Project, Amer. Civil Liberties Union, New York City, for plaintiffs.

Gary Stangler, Exec. Deputy Director, Mo. Dept. of Social Services, Jefferson City, Mo., and Paul Keller and Melody A. Emmert, Children's Services, Mo. Dept. of Social Services, Jefferson City, Mo., for defendants.

## MEMORANDUM AND ORDERS DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, Senior District Judge.

### I

Although this case presently pends on defendants' February 5, 1990 motion for an extension of time to respond, it must be recognized that the extension of time is sought in regard to plaintiffs' January 22, 1990 motion that seeks, among other things, an order holding defendants in contempt of the consent decrees entered by this Court. It is not appropriate that defendants' pending motion for an extension be ruled at this time. Because the Court has not heretofore worked with counsel who signed the motion papers, we will state the reasons for the entry of orders directing further proceedings in greater detail than is usually the case.

### A.

■ It is appropriate to recognize at the outset that plaintiffs underlying motion seeks to invoke the power and jurisdiction conferred on this Court pursuant to 18 U.S.C. § 401 which provides in its relevant part that:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

. . . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. . . .

Consent decrees, of course, are subject to enforcement pursuant to the power conferred by Section 401. To the uninitiated, the approval and the entry of a consent decree is a happy day for counsel for the parties and for the Court. The litigation has apparently been finally resolved to the satisfaction of the parties. Although consent decrees usually provide for the retention of jurisdiction for purposes of enforcement, the case is marked "closed" by the Clerk's office and is removed from the active docket of the Court.

Experience, however, establishes that the implicit hopes shared by counsel and by the court that the entry of a consent decree will be the end of the litigation are frequently destroyed by subsequent proceedings that seek the enforcement of particular provisions included in the consent decree. Experience also establishes that the Supreme Court and the various courts of appeals have given the district courts but very little practical guidance in regard to the procedures to be followed in order to obtain compliance with the provisions of a consent decree.

In our consideration of whether the consent decree presented by the parties for approval in *United States v. Associated Milk Producers*, 394 F.Supp. 29 (W.D.Mo. 1975), should be approved we considered and discussed the "relatively infrequent decisions relating to consent decrees" that had been decided by the Supreme Court.[1] *Id.* at 41. Various facets relating to the enforcement of consent decrees, however, were considered in three recent opinions of the Supreme Court: *Pennsylvania v. Delaware Valley Citizens Counsel*, 478 U.S.

---

1. We further noted that although "somewhere between 70 and 80% of all civil antitrust complaints filed by the Department of Justice are terminated by consent decrees" very little attention "has been focused on the question of whether and how consent decrees have been enforced." 394 F.Supp. at 46. We therefore entered a supplemental order which established the procedures under which the consent decree approved in that case would be enforced. See

Appendix C, *id.* at 56. The Court of Appeals affirmed in 534 F.2d 113 (8th Cir.1976). Certiorari was denied in 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). The enforcement procedures were followed in *United States v. Associated Milk Producers, Inc.*, 477 F.Supp. 671 (W.D. Mo.1979). The background that led to the promulgation of the supplemental order is fully stated in that case.

546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Firefighters v. Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986); and *Spallone v. United States,* — U.S. —, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).

*Delaware Valley* is relevant to this case only in the sense that it reflects the fact that proceedings involving the enforcement of a consent decree is no race for the short winded or those who are faint of heart. For the Court noted that the "[e]ntry of the consent decree marked only the beginning of this story, for implementation of the I/M program did not proceed smoothly." [2] It is something of an understatement to say that the same thing is true in this case.

Although *Firefighters v. Cleveland* presented the narrow question of whether Section 706(g) of Title VII of the Civil Rights Act of 1964 precluded the entry of a consent decree which provided relief that may benefit individuals who were not victims of the defendant's discriminatory practice, the Court was nevertheless required to consider the contention that the Court had, in its past consent decree cases, "recognized as a general principle that a consent decree cannot provide greater relief than a court could have decreed after a trial." 478 U.S. 501 at 524, 106 S.Ct. 3063 at 3076. The Court accordingly reviewed its past consent decree cases and rejected that contention. The Court concluded that "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief

than the court could have awarded after a trial." *Id.*

*Spallone,* the Court's most recent consent decree enforcement case, illustrates the care and patience that a district court must utilize in exercising the power and discretion vested in it in regard to the enforcement of a consent decree. The majority opinion, over the dissenting opinion's protest that the Court did no more than "play district court-for-a-day," concluded that the district court had abused its discretion in regard to the contempt sanctions imposed in regard to the individual councilman of the City of Yonkers because it had failed to comply with the doctrine first stated in *Anderson v. Dunn,* 6 Wheat. 204, 231, 5 L.Ed. 242 (1821) (later quoted in *Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966)) that " 'a court must exercise "[t]he least possible power adequate to the end proposed." *Anderson v. Dunn,* 6 Wheat. 204, 231 (1821); *In re Michael,* 326 U.S. 224, 227 [66 S.Ct. 78, 79, 90 L.Ed. 30] (1945).' *Shillitani v. United States,* 384 U.S., at 371 [86 S.Ct. at 1536]." — U.S. at —, 110 S.Ct. at 632.[3]

This Court anticipates that it will have the cooperation and assistance of counsel for both parties in its careful consideration of the questions presented by plaintiffs' motion that seeks defendants' compliance with the consent decrees entered in this case. The first step that must be taken,

---

**2.** Marcia Robinson Lowry, whose name is listed as one of the members of the Children's Rights Project of the ACLU staff who filed plaintiffs' suggestions in opposition to defendants' motion for an extension of time, recognized the same point in her article *Derring–Do in the 1980s: Child Welfare Impact Litigation After the Warren Years,* Family Law Quarterly, Vol. XX, No. 2 (Summer 1986) at 255. On page 274, she accurately stated: "There is a developing literature concerning the legal problems raised by the enforcement of institutional litigation. Whatever the problems, and the possibilities of judicial-legislative confrontation over the question of how far the court may go in remedying violations of court-ordered judgments, it seems clear that the obtaining of a judgment is only the first step." She concluded that article by stating that "[w]e know little enough about what works, at this stage, particularly in a field, unlike mental retardation, special education or even prison

reform, in which there is no well-developed and acceptable technology for what works." *Id.* at 280.

**3.** Part III of the dissenting opinion, we believe accurately states that the majority opinion "creates no new principle of law." That dissent, however, suggests that the Court' decision "directs a message to district judges that, despite their repeated and close contact with the various parties and issues, even the most delicate remedial choices by the most conscientious and deliberate judges are subject to being second-guessed by this Court." At —, 110 S.Ct. at 648. Justice Brennan then added "I hope such a message will not daunt the courage of district courts who, if ever again faced with such protracted defiance, must carefully yet firmly secure compliance with their remedial orders." *Id.*

however, is the determination of whether a finding of contempt should or should not be made under the facts and the applicable law.

### B.

Plaintiffs' 73–page motion concludes with a prayer that a single order be entered that would include the following relief:

1. affirming the Committee's Recommendations 1, 2(d), 2(e), 7, 16, 19, 20, 28, 30, 31, and 35 and enforcing each of those recommendations;

2. *finding defendants in civil contempt for violating the Court's orders dated March 21, 1983, July 29, 1985 and March 15, 1988;*

3. directing that within 120 days of the date a contempt finding is entered against defendants, the Committee recommend final implementation time frames for each section or subsection of the Consent Decree;

4. requiring defendants to adhere to those time frames;

5. putting defendants on notice that further penalties will result if those time frames are not met;

6. substituting and adding the persons designated in this motion as parties defendant; and

7. granting such other relief as the Court deems just and proper. (Emphasis added.)

Doc. 103 at 72.

Plaintiffs' allegations in regard to why "the court should find defendants in contempt," made to support paragraph 2 of plaintiffs' prayer for relief, are set forth in paragraphs 196–199, inclusive, on pages 68 and 69 of that motion. Paragraph 200 on page 70 of plaintiffs' motion, also included under the plaintiffs' subhead entitled "[t]he Court should find defendants in contempt,"

alleges that "[a]s a *remedy* for contempt, plaintiffs suggest that the Court order that: (a) the formal recommendations be affirmed and enforced; (b) the Committee establish time frames for compliance with each section or subsection of the Consent Decree; (c) that defendants be required to adhere to those time frames; and (d) that defendants be placed on notice that their failure to comply with the time frames will result in penalties." [4] (Emphasis added.) Doc. 103 at 70.

The prayer of plaintiffs' motion shows on its face that plaintiffs implicitly recognize that if they are not entitled to the relief prayed for in paragraph 2 of their motion (praying for a contempt finding), that plaintiffs would not be entitled to the relief prayed for in the other paragraphs of the prayer of that motion. For plaintiffs recognize that the relief prayed for in all the paragraphs of plaintiffs' prayer other than paragraph 2 should not be directed until after "a contempt finding is entered against defendants," as expressly alleged in paragraph 3 of plaintiffs' prayer.

It is therefore of paramount importance that procedures be designed to put first things first in order that the Court can determine whether a contempt finding should or should not be entered. Consideration of any other question, particularly questions of remedy would be premature until after that threshold question is determined.

### C.

The factual circumstances relied on by plaintiffs in paragraphs 196–199 of their motion are alleged in general and conclusory language. Paragraph 196 generally alleges that the Committee's recommendations were "based on facts that establish serious noncompliance with the Consent Decree or other orders in this case." [5]

---

**4.** All of the 205 paragraphs of plaintiffs' motion, excepting only paragraphs 196 to 199, inclusive, are for the most part focused on the *remedy* that plaintiffs seek rather than on the question of whether defendants, on the facts and under the law, have failed to comply with consent decrees entered by this Court.

**5.** Paragraph 196 also alleges that the facts are "more fully discussed in the accompanying Memorandum of Law, ... also justify a finding of contempt." Doc. 103 at 68. When plaintiffs' Memorandum of Law is examined, however, the Court is sent back to plaintiffs' motion. On page 11 of the Memorandum, plaintiffs state

Doc. 103 at 68. That paragraph does not specifically allege the "facts" upon which plaintiffs rely.

Paragraphs 197 and 198 in the same manner, makes reference to the Committee's recommendations and generally alleges that those recommendations were "based on defendants' outright defiance of the Consent Decree" (*id.*) and were also "based on admissions by defendants, defendants' documents, and the Joint Audits." *Id.* at 69. Those two paragraphs do contain references to particular paragraphs of the Consent Decree and also contain parenthetical allegations that the Committee's recommendations were "based on *undisputed* facts showing that [social worker] visits are not taking place" (*id.* at 68–69) (emphasis added) and were "also based on *undisputed* facts showing that foster parents are not receiving the mandatory training." *Id.* at 69 (emphasis added). Indeed, plaintiffs allege that "contempt is clear *and the facts not seriously in dispute."* *Id.* (Emphasis added.)

### D.

The question of whether or not the facts upon which plaintiffs rely to support the entry of an order finding defendants in contempt are in dispute must be given immediate and particular attention. For if there is "no genuine issue as to any material fact" within the meaning of Rule 56 of the Federal Rules of Civil Procedure in regard to the question of whether plaintiffs are "entitled to a judgment as a matter of law" in regard to the relief prayed for in paragraph 2 of their motion may be determined in accordance with the procedures provided in that rule.

Experience establishes that most contempt motions may be and are presented on stipulations of fact agreed to by the parties pursuant to appropriate procedures agreed to by the parties. In cases in which

counsel refuse to cooperate with each other and with the Court, the remaining contempt motions are usually presented and decided under Rule 56 motions for summary judgment.

It is therefore appropriate that primary consideration be given to whether plaintiffs are entitled to the relief prayed for in paragraph 2 of their motion. For until and unless plaintiffs establish that defendants are, in fact and in law in contempt, it is quite premature to consider the complex questions relating to what remedies plaintiffs may be entitled under the circumstances of this case. A detailed order will accordingly be entered but will require plaintiffs to put in more particular focus the factual data upon which they rely to support their prayer that defendants be held in contempt.

### E.

The procedural problems presented in this case are quite similar to those presented in *Thompson v. Walsh*, 481 F.Supp. 1170 (W.D.Mo.1979). *Thompson* was transferred to this division of the Court after plaintiffs in that case had filed contempt motions that alleged that defendants were not in substantial compliance with the applicable 45-day time limit for processing AFDC applications as required by applicable federal law and, more particularly, by a preliminary injunction entered by then Chief Judge Becker on November 24, 1976.

This Court's December 19, 1979 memorandum and order granting plaintiffs' motions for contempt in *Thompson,* published in 481 F.Supp. 1170, shows that those motions were decided on a stipulated record agreed to by the parties after appropriate pretrial procedures were conducted. Copies of some of the memoranda and orders entered in *Thompson* that will generally reflect the procedures followed in that case are attached as Appendix A for the infor-

"[a]s *set forth in the accompanying motion,* defendants have failed to comply with the Consent Decree and this Court's subsequent orders, dated July 29, 1985 and March 15, 1988...." (Emphasis added.) Memo. of Law at 11. And on page 13 of their Memorandum, plaintiffs reiterate that: "As set forth in greater detail in

plaintiffs' Motion, defendants are not in complete, or almost complete, compliance with the Consent Decree." *Id.* at 13. Paragraph 196's incorporation of plaintiffs' Memorandum by reference adds nothing to the conclusory language of that paragraph.

mation of counsel. That appendix follows page 374 of this memorandum opinion.

The procedures reflected in Appendix A, modified to fit the circumstances of a particular case, are generally the same procedures that have been satisfactorily followed in a substantial number of other contempt cases that have pended in this division of this Court over the years. Counsel are requested to carefully review the memoranda and orders contained in Appendix A before the conference that will be convened pursuant to an order of Court for the reasons that one of the principal questions that will be discussed at that conference will be whether the parties may be able to agree that similar procedures may be followed in this case.

### F.

In order to assist counsel in their study of the memoranda and orders contained in Appendix A it is appropriate that the Court fill in some of the gaps that are not apparent on the face of that data.

The Order of October 25, 1979 in *Thompson* was entered after a productive pretrial conference had been conducted with counsel. The parties were thus able to agree upon a full stipulation of all facts and the Court was accordingly able to enter its memorandum and orders granting plaintiffs' motions for civil contempt on November 19, 1979. That memorandum was published in 481 F.Supp. 1170.[6]

This Court's January 30, 1980 order in *Thompson* was entered in implementation of Order (2) entered December 19, 1979 and reflects this Court's concern as to whether the Secretary of the Department of Health and Welfare should be made a party or invited to participate as an *amicus* to assist the Court in designing an appropriate remedy.

The memorandum and order entered March 4, 1980 reflects the unwillingness of the Secretary to be of assistance. On page 4 of that order we stated that:

This Court cannot accept the notion, apparently held by both the Deputy Regional Attorney of HEW and by counsel for the plaintiffs, that the *only* remedy available to HEW under the statutes and regulations is termination of federal funding and that HEW is somehow excused from any responsibility for monitoring the State of Missouri's compliance with federal law.

Although further efforts were made in that regard, those efforts proved to be unsuccessful.

Accordingly, and after obtaining the views of counsel, the Court entered its final judgment, order and decree in *Thompson* on May 2, 1980. Paragraph 11 of that decree was designed to get the Secretary involved, regardless of whether the Secretary wished to be concerned with the manner in which the State of Missouri was administering the AFDC program.

This Court's final judgment, order and decree was appealed to the Eighth Circuit and this Court was affirmed in *Thompson v. Freeman*, 648 F.2d 1144 (8th Cir.1981), with directions, however, that paragraph 11 of the decree be deleted. This Court accordingly on June 26, 1981 amended the May 2, 1980 decree by deleting paragraph 11 in compliance with the mandate of the Court of Appeals.

The memorandum and orders directing further proceedings entered on January 11, 1983 will reflect that plaintiffs thereafter filed a new motion for civil contempt in *Thompson*. On page 3 of that order we stated that "[o]ur memorandum opinion in *Thompson v. Walsh*, 481 F.Supp. 1170 (W.D.Mo.1979) shows ... that our determination of the then pending motion for contempt was processed on a stipulation of facts agree to by the parties." We added that "[w]e will therefore enter orders directing further proceedings similar to those

---

**6.** It is important to note that we stated in our published order that "experience teaches that most judges recognize that the judicial task of determining whether a particular State is in compliance with applicable federal welfare law is an infinitely easier judicial task than design-ing and selecting an appropriate remedy which will assist and enable a State to cure its default and to administer the welfare program in accordance with applicable federal law." 481 F.Supp. at 1177. Experience in this case confirms what was said in *Thompson*.

entered and followed in 1979 in order that the merits of plaintiffs' pending motion for contempt may be decided on a factual record agreeable to all the parties." *Id.* at 3–4.

The order entered March 28, 1983 establishes that the parties' preparation of a stipulation of fact established that there had been "a dramatic increase in defendants' compliance rate with processing AFDC applications" and both parties requested that the new motion for civil contempt be held in abeyance for 120 days. No further action was required in regard to plaintiffs' second motion for contempt.

The order entered October 29, 1986 establishes that plaintiffs filed still another motion for civil contempt. Essentially the same procedures were followed in connection with that motion. The order entered March 16, 1987 in *Thompson* reflects the agreement of the parties that they would present to the Court papers that would provide for the ultimate disposition of plaintiffs' third motion for contempt.

We have included a copy of the final Consent Decree entered in *Thompson* on April 30, 1987 in Appendix A for the reason that decree reflects the exemplary cooperative manner in which the parties eventually resolved the complicated problems incident to processing applications of Aid to Families with Dependent Children (AFDC) in a timely manner. Paragraph 72, page 18 of the final consent decree approved in *Thompson* reflects the parties' appropriate recognition that some issues in dispute may appropriately be separated for later determination of the Court. Paragraph 72 accordingly stated the parties' specific agreement that "this Consent Decree does not encompass resolution of the appropriateness of a fine under Plaintiffs' Motion for Contempt" and their further agreement that they would "submit the matter of the fine requested by plaintiffs and the attor-

ney's fees requested by plaintiffs to the Court for a final determination."

Detailed procedures were set forth in paragraphs 74 to 76, pages 18–19 of the *Thompson* consent decree under which the sole remaining issues of fines and attorney's fees were to be resolved. It was not necessary, however, for the Court to decide either of those disputed issues.

The stipulation of the parties filed February 23, 1988 (approved by the Court on February 26, 1988) established that defendants agreed to pay plaintiffs' attorney's fees in the amount of $59,525.25 and that plaintiffs withdrew their request that defendants be fined or otherwise subjected to a penalty.[7]

The docket sheet shows that the cooperation parties extended to each other and to this Court in *Thompson* has obviated the necessity of plaintiffs filing any additional motions seeking enforcement of the various decrees entered in *Thompson*.

We know of no reason why the procedures followed in *Thompson*, which have been followed in many other contempt cases both before and after *Thompson*, may not, with whatever modifications that may be appropriate, be followed in this case.

## II

### A.

Plaintiffs' February 8, 1990 suggestions in opposition to defendants' motion for enlargement of time state that "[d]efendants, their counsel and DFS officials have been in negotiations with plaintiffs concerning the subject matter of the Motion for the last seven months." Doc. 107 at 2. Defendants' February 5, 1990 suggestions in opposition state that "defendants' efforts at compliance are ongoing and are presently being directed by a thorough implementa-

---

**7.** The $59,525.25 of plaintiffs' attorney's fees agreed to by the parties in *Thompson* is in sharp contrast with the attorney's fees and the Special Master fees that have already been awarded in *Joseph A. by Wolfe v. New Mexico Dept. of Human Services*, No. 80–06235B, that has long pended and still pends in the District of New Mexico. (Judge Burciaga's denial of a motion to dismiss is reported in 575 F.Supp. 346 (D.N. M.1983)). The docket sheet shows that over $1,000,000.00 in plaintiffs' attorney's fees and Special Master fees have been awarded in that case.

tion plan which was presented to the monitoring committee during the fall." Doc. 106 at 2–3.

This Court, of course, has not been advised of how the apparently lengthy negotiations between the parties were conducted or who participated in those negotiations.

It is, of course, a most helpful circumstance to learn that the parties have, in fact, been attempting to resolve their difficulties in accordance with paragraph XV–G of the 1983 Consent Decree.[8] The Court, however, simply does not presently have sufficient information to determine whether the time within which the defendants should be required to file a response to plaintiffs' January 22, 1990 motion should be extended to April 16, 1990, as defendants suggest, or until February 19, 1990, as plaintiffs suggest. Indeed, the Court does not really know whether the filing of a response to that motion would materially advance the determination of the real issues presented in this case.

## B.

In order to obtain additional information, it is appropriate that the Court take judicial notice of the fact that shortly after the 1983 Consent Decree was approved by Judge Clark on March 25, 1983, the General Assembly of Missouri enacted H.B. 256, approved June 23, 1983. *See* Laws of 1983 at 504. That Act established the Missouri Children's Service Commission. Section 2 of the Act expressly required that the Commission:

Report annually to the governor with five copies each to the House of Representatives and Senate about its activities including, but not limited to the following:

. . . .

(c) Recommendations for statutory and appropriation initiatives to implement the integrated state plan;

. . . .

(e) A report from the commission regarding the state of children in Missouri;

(f) *A report on implementation of the consent decree in the case of G.L. v. Zumwalt.* (Emphasis added).

The Commission's annual report in regard to the Commission's view of how "the consent decree in the case of G.L. v. Zumwalt" was being implemented is of obvious importance to the Court and the parties in this case.[9] An order will be entered that will require the defendants to produce the portions of the annual reports of the Children's Service Commission that included the Commission's compliance with subparagraphs (8)(c), (e), and (f) of Section 2 of the Act approved June 23, 1983.

## C.

■ It is also appropriate for the Court to take judicial notice of the fact that federal funding for state foster care systems is made available to the states under Title IV of the Social Security Act. *See* Pub.L. 96–272, 42 U.S.C. § 670, et seq. Administration of federal foster care maintenance payments, adoption assistance, and child welfare services is administered in accordance with the regulations set forth in 45 C.F.R. §§ 1355.10, et seq., 1356.10, et seq., and 1357.10, et seq.[10]

Part 1356 of the Code of Federal Regulations sets forth the requirements specifically applicable to Title IV–E of the Social Security Act. Present attention need be

---

**8.** Paragraph XV–G of the 1983 Consent Decree provided: "This decree shall remain in full force and effect unless specifically modified by agreement of the parties. Prior to initiating formal enforcement proceedings, *plaintiffs shall notify defendants of any area(s) of noncompliance and shall attempt to resolve such issues without the assistance of the Court.* In the event that the issues are not resolved within thirty (30) days following notice to defendants, plaintiffs may move the Court to enforce this decree." (Emphasis added.)

**9.** Section 2 of H.B. 256 was rewritten in 1989. That section now appears as § 210.102 V.A.M.S. While subparagraph (f) of the 1983 Act was eliminated, subparagraph (e) requiring a report "regarding the state of children in Missouri" was re-enacted.

**10.** The sections of the Code of Federal Regulations cited in the text are taken from the United States Code Annotation of 42 U.S.C. § 670.

directed only to C.F.R. § 1356.20(c)(1) which states that:

(c) The following procedures for approval of State plans and amendments apply to the title IV–E program:

(1) The State plan consists of written documents furnished by the State to cover its program under Part E of title IV. After approval of the original plan by the Commissioner, ACYF, all relevant changes, required by new statutes, rules, regulations, interpretations, *and court decisions*, are required to be submitted currently so that ACYF may determine whether the plan continues to meet Federal requirements and policies. (Emphasis added.)

It is appropriate to enter an order directing the defendants to produce the written documents furnished by the State to cover its program under Title IV–E of the Act that included any and all references made to the Consent Decree and the Supplemental Consent Decree entered by this Court in this case.

It is entirely possible that C.F.R. § 1356.20(c)(1)'s requirement that the impact of "court decisions" be reported so that the ACYF may determine whether the State's plan continues to meet federal requirements is merged with the CAP submission the State is required to submit under 46 C.F.R. §§ 95.505–.507.[11]

Defendants will understand that their response to the order that will be entered in regard to the written documents furnished by the State under Title IV–E should include all documents that may have been submitted as a part of the State's CAP plan.

The order relating to the production of the portions of the annual report of the Missouri Children's Service Commission and the order concerning the States' Title IV–E plan will require the production of that data before the date of the conference between the Court and counsel will be scheduled so that such data may be considered and discussed at the conference. The same thing is true of the order entered requiring plaintiffs to file a response concerning their factual claims.

For the reasons stated, it is

ORDERED (1) that on or before March 3, 1990, plaintiffs shall prepare, serve, and file a response to this Order (1) which will clearly identify the particular provisions of the Court's orders dated March 21, 1983, July 29, 1985, and March 15, 1988 to which plaintiffs made reference in paragraph 2 of the prayer of their January 22, 1990 motion. In addition to that identification, plaintiffs shall clearly state in regard to each identified paragraph the factual data which plaintiffs contend would show that there is not a genuine issue as to any material fact in regard to plaintiffs' claim that they are entitled to a finding that defendants are in contempt of this Court.

Plaintiffs' response to this Order (1) shall also state (a) whether plaintiffs believe that the parties should be able to agree on appropriate stipulations under which plaintiffs' prayer for a contempt finding, as alleged in paragraph 2 of the prayer of its January 22, 1990 motion, could be presented and decided by the Court and (b) whether counsel for the plaintiffs are willing to cooperate with counsel for the defendants and with this Court in a good faith effort to enter into such stipulations. It is further

ORDERED (2) that on or before March 3, 1990, defendants shall prepare, serve, and file a response to this Order (2) to which will be attached copies of the portions of the annual reports of Missouri Children's Service Commissions that included the Commission's compliance with subparagraphs (8)(c), (e), and (f) of Section 2 of the Act approved June 23, 1983 (Mo.Laws of 1983 at 504).

Defendants shall also attach to their response to this Order (2) copies of the written documents furnished by the State to

11. The State's CAP was litigated in another division of this Court in *State of Mo. v. Bowen*, 638 F.Supp. 37 (W.D.1986). The district court's grant of summary judgment in favor of the Secretary was affirmed by the Court of Appeals in 813 F.2d 864 (8th Cir.1987). Footnote 6, page 866 of the Court of Appeals' opinion indicates that the State CAP made substantial changes in regard to its Title IV–E funds.

cover its program under Title IV–E of the Social Security Act that included any and all references made to the Consent Decree and Supplemental Consent Decree entered in this case.

Defendants' response to this Order (2) shall also include a statement as to whether counsel for the defendants are willing to cooperate with counsel for the plaintiffs and with this Court in a good faith effort to enter into stipulations of fact under which plaintiffs' alleged right to a contempt finding as alleged in paragraph 2 of plaintiffs' January 22, 1990 motion could be presented and determined by the Court. It is further

ORDERED (3) that a conference is hereby scheduled to commence on March 7, 1990, at 1:30 p.m. in this Division of the Court. It is further

ORDERED (4) that if counsel for the parties are in agreement that the dates set in Orders (1), (2), and (3) should be adjusted, they shall confer and agree upon an order modifying those dates and shall submit the same for the approval of the Court.

## APPENDIX A

Mabel Thompson, et al., Plaintiffs,

vs.

James F. Walsh, et al., Defendants.

No. 75 CV 494–W–B–1

In the United States District Court for the Western District of Missouri Western Division

## ORDER

### October 25, 1979

The parties have agreed to confer, and prepare and file on or before November 15, 1979, a stipulation of facts upon which the pending motions for contempt may be considered.

If the parties are able to enter a full stipulation of all the facts, said stipulation shall also include an agreed schedule of briefs.

If the parties are unable to agree upon a full stipulation, they shall file the partial stipulation upon which they are able to agree and request the Court to convene a further pretrial conference in order that further appropriate directions may be made under the circumstances.

IT IS SO ORDERED.

/s/ John W. Oliver
Chief Judge

## ORDER

### January 30, 1980

On December 19, 1979, this Court granted plaintiffs' motion for civil contempt, finding defendant in violation of the order of November 24, 1976 entered by the Honorable William H. Becker, then Chief Judge of this Court. The November 24, 1976 order required defendant to process applications for Aid to Families with Dependent Children within forty-five (45) days of the date of filing.

In paragraph (2) of the December 19, 1979 order this Court directed counsel to "convene ... to determine whether this Court should seek the views of the Secretary of the Department of Health and Welfare as either a party or as an *amicus* to assist it in designing an appropriate remedy consistent with the order granting plaintiffs' motions for contempt."

Counsel have met in accordance with paragraph (2). In a letter dated January 16, 1980 defendant states that he "believe[s] HEW should appear as an amicus." In his "Report to the Court" mailed that same date, plaintiff states that he "do[es] not object to the participation of HEW as an *amicus*." The report of plaintiffs' counsel also states that "[t]he Court should also be aware that in both Illinois and Connecticut, the chosen remedy worked."

The Court is not aware the remedies chosen in Illinois and Connecticut "worked." Nor is it aware which remedy "worked" the best. Nor is it aware of whether some other remedy "worked" better than those devised in *Rodriguez v. Swank*, 496 F.2d 1110 (7th Cir.1974) and *Class v. Norton*, 376 F.Supp. 496 (D.Conn. 1972). This Court is interested in entering an order, which it hopes would be agreeable to the parties in this case, that will effectively remove any necessity for any

further judicial supervision. This Court suggested that counsel consider whether the Court should seek the view of the Secretary of the HEW for the purpose of having accurate information in regard to (1) whether the remedy directed in the *Rodriguez* case was more or less effective than that directed in the *Class* case and, of equal importance, (2) whether some other entirely different remedy might be more effective than any heretofore directed by any court.

The reports of counsel show that they have been in at least telephone contact with "several officials and lawyers at HEW." The Court is satisfied that counsel should be afforded a further opportunity to conduct an across-the-table conference with each other and with representatives of HEW for the purpose of attempting to agree upon an appropriate decree which reflects the best judgment of everyone concerned in regard to the most effective remedy to be directed in this case. The Court is confident that informed persons within the Department of Health and Welfare will be happy to advise counsel of the experience that Department has had in other States and to indicate their view in regard to how the problems encountered in the State of Missouri may be solved.

Should counsel not be able to agree upon the form of an approved judgment and decree, each side should certainly present the form of judgment and decree which they believe the Court should enter under the circumstances.

Accordingly, and for the purpose stated, it is

ORDERED (1) that counsel shall promptly convene an across-the-table conference in accordance with what we have stated above for the purpose of attempting to agree upon the form of the judgment and decree to be entered in this case. It is further

ORDERED (2) that in the event that counsel fail to agree upon the form of judgment and decree to be entered they shall prepare, serve, and file not later than February 8, 1980 a notice indicating this.

Also, in this event, each party shall forward to the Court a form of judgment and decree that he believes should be entered. It is further

ORDERED (3) that in the event counsel are not able to reach full agreement on the form of judgment and decree to be entered, they shall meet with this Court on February 12, 1980 at 1:30 p.m.

Counsel shall in this event request that Ms. Caroline French, Deputy Regional Attorney for Region VII of HEW, be invited to attend the conference conditionally scheduled for February 12, 1980, together with staff persons familiar with the problems we have discussed above.

/s/ John W. Oliver
Chief Judge

## MEMORANDUM AND ORDERS

### March 4, 1980

In accordance with directions made at the pretrial conference held February 19, 1980, the Court has received a letter from the Deputy Regional Attorney for the Department of Health, Education and Welfare dated February 26, 1980, and a letter from plaintiffs' counsel dated February 29, 1980. Statements in both those letters, to which we will make reference, suggest that the Court is in need of additional factual information for the purpose of drafting an appropriate judgment and decree in the above entitled cause.

The letter of the Deputy Regional Attorney of the Department of Health, Education and Welfare directs attention to the applicable statutes which impose the mandatory requirement that a State plan shall include provisions requiring prompt decision on applications within 45 days, subject to particular narrow exceptions. That letter also directs attention to section 404(a) of the Social Security Act which authorizes the withholding of federal payments if a State does not substantially comply with the mandatory federal time requirements of a particular State plan.

The letter of the Deputy Regional Attorney further directs attention to the provision of section 404(a) which places the duty

upon the Secretary to serve notice on a state agency that further payments will not be made to the State until the Secretary is satisfied that the State is in fact in compliance.

And, finally, that letter directs attention to the Regulations designed to implement section 404(a) which contemplate that (a) informational discussions to be convened to resolve the questions involved, and that (b) compliance hearings be conducted upon notice in the event informational discussions prove to be unsuccessful. The Regulations also provide for appropriate review in a United States Court of Appeals of any final determination made by the Secretary under the circumstances. The Deputy Regional Attorney of HEW, however, concludes that:

> Federal law provides only one remedy to the Department—that is to withhold Federal financial participation from the State after there has been a hearing and a finding that the State did not substantially comply with any of the provisions of the Social Security Act or the regulations in the administration of the State plan.

Plaintiffs' counsel's letter of February 29, 1980 states that "HEW's record in monitoring defendants' compliance with federal processing standards has been abysmal" and that "plaintiffs understandably have little confidence in HEW's ability to successfully monitor defendants' compliance with federal law." Consistent with the narrow view of the applicable statutes and regulations expressed by the Deputy Regional Attorney of HEW, counsel for the plaintiffs also adopt the notion that "the *only* remedy available to HEW in cases of non-compliance is termination of funding." (Plaintiffs' counsels' emphasis).

This Court is familiar with the fact that the general pattern for administrative relief provided in the Social Security Act and the Regulations promulgated to implement that Act follow a pattern consistent with that used in connection with the administration of many federal programs. That well established administrative pattern, if properly implemented, provides many practical and effective remedies short of the termination of funding. Those remedies include as a first step, as do the Regulations quoted in the letter of the Deputy Regional Attorney, appropriate provision for informational discussions with State officials to provide reasonable opportunity for resolution of the questions presented. In the event these discussions fail to cure the difficulty, appropriate provision is made for further steps which include the conducting of compliance hearings.

None of those preliminary remedies involve the immediate termination of federal funding. The applicable statutes and regulations contemplate administrative procedures under which the State is given appropriate notice that unless conditions of non-compliance are corrected, the State may lose its federal funding. Indeed, the Regulations imply that federal funding will continue until and unless the final determination of the Secretary that such funding be terminated is affirmed in an appropriate United States Court of Appeals.

This Court has heretofore requested accurate information in regard to the manner in which HEW has in fact monitored the State of Missouri's compliance with its own plan. It has also directed that a copy of our memorandum and orders of December 19, 1980 granting plaintiffs' motions for civil contempt be forwarded to the Secretary of HEW so that this Court could have the benefit of a national rather than a regional view of the problems presented. Specific inquiry has heretofore been made in regard to what may have happened to the investigation launched by HEW to which the Court of Appeals made specific reference in footnote 1 on page 804 of its decision in *Like v. Carter*, 448 F.2d 798 (8th Cir.1971). This Court stated in its memorandum opinion of December 19, 1978 that "the record in this case [does not] show why the hope expressed by the Court of Appeals in [*Like v. Carter*] in regard to the 1971 HEW investigation was not realized."

This Court cannot accept the notion, apparently held by both the Deputy Regional

Attorney of HEW and by counsel for the plaintiffs, that the *only* remedy available to HEW under the statutes and regulations is termination of federal funding and that HEW is somehow excused from any responsibility for monitoring the State of Missouri's compliance with federal law.

We do not know whether the informational discussions required under 45 C.F.R. § 201.6(c) are open to the public but we are satisfied that if the second step of holding a compliance hearing were necessary, such a hearing undoubtedly would be a matter of public record. The whole theory of requiring such a public hearing is to force public attention and discussion upon the manner in which a State may be risking loss of future federal funding by an apparent failure to comply with its federally approved State plan.

This Court does not have any accurate information in regard to HEW's record in monitoring defendants' compliance with federal processing standards. The Court is confident, however, that if that record is in fact "abysmal," as plaintiffs' counsel suggests, that enforcement procedures similar to those provided in *United States v. Associated Milk Producers, Inc.*, 394 F.Supp. 29 (W.D.Mo.1975), would certainly avoid the possibility that HEW would be able to accept "unsubstantiated statistics" or to rely upon statistics which were "clearly inaccurate," as plaintiffs' counsel charge in their letter of February 29, 1980.

It should be apparent from what is stated above and from what this Court stated in its memorandum opinion of December 19, 1979, that this Court must have accurate factual data in regard to how HEW has in fact attempted to monitor the State of Missouri's compliance with federal processing standards from at least the time of the report and recommendations of the hearing examiner dated May 3, 1971, as stated in the Court of Appeals' opinion in *Like v. Carter, supra.*

For the reasons stated it is

ORDERED (1) that HEW shall prepare, serve, and file a response to this order in which it shall attach the report and recommendations of the hearing examiner, dated May 3, 1971, together with a copy of all administrative steps which HEW has made since that time in purported compliance with the statutes and regulations cited in the Deputy Regional Attorney's letter to this Court dated February 26, 1980. It is further

ORDERED (2) that HEW shall file such response on or before March 11, 1980. If all the material cannot be gathered by that time, HEW shall nevertheless file a response and at the conference presently scheduled for March 12, 1980, seek leave to file a supplemental response within such time as may be reasonable under the circumstances. It is further

ORDERED (3) that a copy of this memorandum and opinion and the orders entered be forwarded to the Honorable Patricia Harris, Secretary of the Department of Health, Education and Welfare so that this Court may have the benefit of a national rather than a regional view of the problems presented.

/s/ John W. Oliver
Chief Judge

Mabel Thompson, et al., Plaintiffs,

vs.

David Freeman, et al., Defendants.

No. 75 CV 494 W–B–1

In the United States District Court for the Western District of Missouri Western Division

FINAL JUDGMENT, ORDER AND DECREE

May 2, 1980

On November 24, 1976 the Court entered a preliminary injunction in this cause which required defendants to process applications for Aid to Families with Dependent Children (AFDC) within forty-five (45) days as required by 45 C.F.R. § 206.10(a)(3). On December 19, 1979 defendants were found in civil contempt for failing to comply with this preliminary injunction.

This case is now ready for entry of a final order determining whether the prelim-

inary injunction should be made permanent and providing an appropriate remedy for defendants' contempt.

It is therefore

ADJUDGED, ORDERED, AND DECREED:

1. That this Court has jurisdiction over the subject matter of this action and the parties hereto. That the Complaint states a claim upon which relief can be granted under 28 U.S.C. §§ 1343(3) and 1343(4).

2. That the provisions of this Final Judgment, Order and Decree applicable to defendants shall also be applicable to their successors in office and, in addition, to all persons in active concert or participation with them who receive actual notice of this Final Judgment, Order and Decree by personal service or otherwise, in accordance with Rule 65(d) of the Federal Rules of Civil Procedure.

3. That defendants are permanently enjoined from failing to process applications for AFDC within forty-five (45) days of the date of application in accordance with 45 C.F.R. § 206.10(a)(3).

4. That persons whose applications have not been processed within forty-five (45) days in accordance with 45 C.F.R. § 206.10(a)(3) shall be presumed eligible for AFDC and accompanying Medicaid benefits. By the end of the 45th day from the date of application, defendants shall issue these persons Medicaid cards and a check in the amount that the applicants would receive if they had been found eligible. In the event that defendants are unable to determine this sum, a check shall be issued by the end of the 45th day in the amount that the applicants would receive if they had been found eligible for the maximum grant amount.

5. That defendants shall not prematurely deny AFDC applications in violation of 45 C.F.R. § 206.10(a)(3).

6. That defendants shall not terminate or reduce the benefits of applicants presumed eligible pursuant to this order without ten (10) days advance written notice and an opportunity for a pre-termination or pre-reduction hearing as required by 45 C.F.R. § 205.10.

7. That defendants shall not recoup any benefits paid pursuant to this order except in accordance with 45 C.F.R. § 233.20(a)(12).

8. That defendants shall provide to plaintiffs' attorneys and to the Regional Commissioner of the Social Security Administration a monthly report which shall state the name and address of all AFDC applicants whose applications were filed during the month; the date each application was filed; whether the applicant was approved, denied, or presumed eligible; and the date on which each application was processed by mailing the assistance check or notification of denial of assistance. This report shall also identify by name and address all AFDC applicants whose applications were not processed within forty-five (45) days due to applicant delay in which instances the case record shows the cause for the delay. The monthly report shall be used solely for the purpose of enforcing this Final Judgment, Order and Decree. Plaintiffs' attorneys shall not communicate any individually identifiable information contained in this report to anyone other than defendants, appropriate officials in the Department of Health, Education and Welfare or its successor agency, and this Court.

9. That this Final Judgment, Order, and Decree, with the exception of paragraph No. 8, shall be fully implemented for all AFDC applications received on or after May 1, 1980. Paragraph No. 8 shall be fully implemented by August 1, 1980.

10. That attorneys' fees are hereby awarded to plaintiffs in an amount to be determined later.

11. That if any plaintiff or other person or counsel who represents such plaintiff or other person believes that defendants are not complying with the provisions of this Final Judgment, Order and Decree, such person shall, before making or filing any application for this Court to exercise its independent power and jurisdiction to enforce the Final Judgment, Order and Decree, take the following action:

(a) Such plaintiff(s) or other person(s) or their counsel shall prepare and serve on the Regional Commissioner of the Social Security Administration an appropriate written request that HEW or its successor agency take appropriate action to enforce the provisions of this Final Judgment, Order and Decree.

(b) Such request shall state with particularity the circumstances concerning defendants' alleged noncompliance including exhibits and affidavits of persons with personal knowledge as to the alleged noncompliance. A copy of the request and supporting data shall be forwarded to this Court and to defendants. Noncompliance shall be as defined in 42 U.S.C. § 604(a)(2) and 45 C.F.R. § 201.6(a).

(c) The Regional Commissioner of the Social Security Administration shall, within fifteen (15) days after receipt of a request, reply to such request in writing. Such reply shall state with particularity what action, if any, will be taken by HEW or its successor agency; when such action, if any, will be taken; and the reasons supporting the decision of HEW or its successor agency. A copy of that reply shall be forwarded to the Court and to defendants.

(d) In the event HEW or its successor agency, as a result of the request, takes action deemed appropriate by the complaining party, no further proceedings will be necessary.

(e) In the event that HEW or its successor agency does not reply within the fifteen (15) day period, or replies within the fifteen (15) day period that it intends to take action considered to be inadequate by the complaining party, or subsequently fails to take action deemed to be appropriate by the complaining party, then in those circumstances, and only in those circumstances, such person may promptly advise the Court in writing and file an appropriate motion, with a copy to defendant, that the Court give appropriate consideration as to whether the Court should issue a rule to show cause and thereafter exercise its independent power and jurisdiction to take appropriate action to enforce this Final Judg-

ment, Order and Decree as the circumstances may require under applicable law.

(f) The Court will consider the motion of the complaining party, the suggestions filed in support of and in opposition to that motion, together with the written request to HEW or its successor agency, and the reply from HEW or its successor agency and thereafter determine what further action, if any, should be taken under the circumstances.

12. Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Final Judgment, Order and Decree to apply to this Court at any time for further orders and directions as may be necessary or appropriate for the continuation or carrying out of this Final Judgment, Order and Decree, for the amendment or modification of any of the provisions hereof, for the enforcement or compliance therewith, and for the punishment for violation thereof.

/s/ John W. Oliver
Chief Judge

## AMENDMENT OF JUDGMENT

### June 26, 1981

On June 15, 1981 the Eighth Circuit mandate remanding this case for further proceedings consistent with the May 13, 1981 opinion of the Court of Appeals was filed in this case.

In compliance with the mandate of our Court of Appeals we hereby modify this Court's Judgment, Order and Decree entered May 2, 1980 by deleting paragraph eleven of that order.

We join with the Court of Appeals in urging and expecting that the Secretary of the Department of Health and Human Services will voluntarily and diligently assist the Missouri Department of Social Services in achieving substantial compliance with federal law.

Accordingly, it is

ORDERED that this Court's Final Judgment, Order and Decree entered May 2, 1980 in *Mabel Thompson, et al. v. David Freeman, et al.*, No. 75 CV 494–W–1, is

hereby amended and paragraph eleven of that same final judgment Order and Decree is hereby deleted in compliance with the direction of the Eighth Circuit Court of Appeals.

/s/ John W. Oliver
Senior Judge

Mabel Thompson, et al., Plaintiffs,

vs.

Barrett Toan, Director, Missouri Department of Social Services, and James Moody, Director, Missouri Division of Family Services, Defendants.

No. 75–CV–494–W–1

In the United States District Court for the Western District of Missouri Western Division

MEMORANDUM AND ORDERS DIRECTING FURTHER PROCEEDINGS

January 11, 1983

Plaintiffs' pending motion for a judgment of civil contempt alleges that defendants have failed and/or refused to comply with this Court's permanent injunction entered May 2, 1980. Plaintiffs' suggestions in support of that motion accurately state that the presumptive eligibility portion of this Court's final judgment was designed to ensure that no eligible AFDC applicant would ever again be required to wait more than the maximum of forty-five (45) days time limit before AFDC benefits were mailed.

Plaintiffs attached two exhibits to their memorandum in support of their pending motion and summarized the data in those exhibits by stating that:

In November of 1980, the statewide timeliness rate for approved applications was only 95.7%, and in that month alone more than one hundred (100) eligible applicants were not mailed an AFDC check within forty-five (45) days. For April, May, and June of 1982, the most recent months for which statistics are available, the statewide compliance rate for approved applicants has been 94.3%, 95.2%, and 96.3%. During the same three months, the timeliness rate for Jackson County has been a deplorable 86.7%, 90.4% and 86.7%.

Plaintiffs' suggestions added that "on a statewide basis, since presumptive eligibility was instituted in May of 1980, a total of one thousand, three hundred and fifty-eight (1,358) eligible applicants have not been mailed an AFDC check within the forty-five (45) day time limit."

With renewed reliance upon *Rodriguez v. Swank*, 496 F.2d 1110 (7 Cir.1974), plaintiffs state that "the principal issue before this Court is the fashioning of an appropriate sanction which will motivate the defendants to purge themselves of contempt," and that "plaintiffs submit that a fine must be added to the present Order to provide a back-up remedy for the hundreds of applicants who are presently 'falling through the cracks' of presumptive eligibility."

Defendants' suggestions in opposition raise procedural questions based on *Sanders v. Monsanto Co.*, 574 F.2d 198 (5 Cir. 1978), and also contend that, on the merits, and in accordance with *Shands v. Tull*, 602 F.2d 1156 (3 Cir.1979), defendants are in substantial compliance with this Court's May 2, 1980 order. Although it is apparent that the parties are not in agreement in regard to how the exhibits before the Court should be read, defendants contend that "a hearing is unnecessary since Plaintiffs' figures show substantial compliance on the part of the Defendants."

Defendants summarize their position on the merits by stating that:

Looking at it over the total period for the state of Missouri, Plaintiffs' own figures show that Defendants have averaged 97.5 percent current since the Court entered its order. To call this anything but substantial would unfairly punish Defendants for a performance that is probably one of the best in the nation.

Defendants further suggest that "should this Court believe that there is a question as to Defendants' compliance, then Defen-

dants submit that this Court must issue an order to Defendants for show cause why they should not be held in contempt and Defendants be given an opportunity for a full evidentiary hearing to submit evidence regarding the disputed facts as to the actual performance of defendants and the reasons for any delay."

The Court received a letter from plaintiffs' counsel dated December 1, 1982 and has considered plaintiffs' December 17, 1982 response to defendants' suggestions in opposition. Both filings show that figures for July, 1982 are now available. Plaintiffs' most recent filing also states that "Governor Bond recently acted to withhold part of the funds which are appropriated to the Missouri Division of Family Services for administrative purposes, including processing AFDC applications."

Our memorandum opinion in *Thompson v. Walsh*, 481 F.Supp. 1170 (W.D.Mo.1979) shows that we are familiar with *Rodriguez v. Swank*, and with the remedy approved by the Seventh Circuit in that case. That opinion also shows that our determination of the then pending motion for contempt was processed on a stipulation of facts agreed to by the parties. We believe it obvious that any procedural objection made by defendants would be mooted if the parties agree to enter into a similar stipulation for purposes of determining the now pending motion for contempt.

We will therefore enter orders directing further proceedings similar to those entered and followed in 1979 in order that the merits of plaintiffs' pending motion for contempt may be decided on a factual record agreeable to all the parties.

Accordingly, it is

ORDERED (1) that this case be set for conference with the Court on Monday, January 24, 1983 for the purpose of approving a stipulation of facts and to direct any further proceedings that may be necessary under the circumstances. It is further

ORDERED (2) that counsel, prior to the January 24, 1983 conference, shall prepare and agree upon what, hopefully, will be a full stipulation of facts under which plaintiffs' pending motion for contempt may be considered and determined. It is further

ORDERED (3) that the following procedures shall be followed in connection with the preparation and agreement on the stipulation of facts above directed:

(a) On or before Monday, January 17, 1983, counsel for the respective parties shall serve on opposing counsel a draft of a stipulation of facts which each side believes should be included in the full stipulation of facts.

(b) Counsel shall arrange an across-the-table conference on a date, time, and place convenient to counsel for both sides during the week of January 17, 1983 for the purpose of melding all of the paragraphs of the stipulations of facts theretofore proposed by counsel for each side into a single and final stipulation of fact agreeable to both sides. Should counsel object to the materiality or relevancy of a particular paragraph proposed by opposing counsel, counsel shall nevertheless agree to the factual accuracy of such a proposed paragraph but shall preserve their objection by the addition of a sentence which shall state that the parties have agreed, subject to particular counsel's objection of relevancy or materiality.

(c) The Court will approve the parties' stipulation and direct any further proceedings that may be necessary at the January 24, 1983 conference. It is further

ORDERED (4) that on or before noon, Friday, January 21, 1983, counsel shall prepare and file an agreed agenda for the January 24, 1983 conference with the Court.

If counsel are not able to agree on all items for discussion, the agenda submitted shall include all items which any counsel may have suggested for inclusion but to which opposing counsel refused to agree.

/s/ John W. Oliver
John W. Oliver
Senior Judge

## MEMORANDUM AND ORDER

### March 28, 1983

The Court has considered the joint report to the Court filed March 25, 1983. That report, executed by counsel for both parties, reflects a dramatic increase in defendants' compliance rate with processing AFDC applications.

The parties stated their agreement that "if defendants continue their improved compliance in AFDC applications, then there will be no need for further judicial action in this case."

The parties therefore request that the plaintiffs' pending motion for civil contempt be held in abeyance for a period of 120 days in order to permit review of four additional monthly processing reports to be filed within that time.

The plaintiffs state that if the improved compliance rate is established by the four additional monthly processing reports, plaintiffs will withdraw their pending motion for civil contempt. If not, plaintiffs will go forward with their pending motion at that time.

The request of counsel is reasonable. Defendants are to be commended on their improved compliance. Counsel for the parties are to be commended on their cooperation with each other and with this Court.

Accordingly, it is

ORDERED that the joint request of the parties to hold plaintiffs' pending motion for civil contempt in abeyance for a period of one hundred and twenty (120) days from the date of this order should be and the same is hereby granted.

/s/ John W. Oliver
John W. Oliver
Senior Judge

## ORDER

### October 29, 1986

A conference in the above-styled case was held on October 29, 1986. The case pends on plaintiffs' motion for order adjudicating defendants in civil contempt for violation of final judgment. In accordance with procedures routinely followed by this Court in contempt cases, modeled on Rule 42 of the Federal Rules of Criminal Procedure, the defendant has been properly notified of the pending motion and will be afforded an opportunity to be heard.

Pursuant to discussion at the conference, counsel for the parties are hereby ordered to arrange a time as soon as possible at which they will jointly study the computer reports issued by the Missouri Department of Social Services. This study shall be conducted with the assistance of employees of the Missouri Department of Social Services who are knowledgeable in the manner in which those reports are prepared. The study of these reports together with that of other data in the possession of the Department is to be conducted for the purpose of entering into stipulations of fact of the type filed in 1979 in this case in conjunction with an earlier contempt motion. *See Thompson v. Walsh,* 481 F.Supp. 1170 (1979).

Counsel for the parties are hereby ordered to file with this Court a status report on or before November 20, 1986, which shall indicate whether any additional discovery of either documentary evidence or deposition testimony will be necessary for the final disposition of the pending motion. After the Court has had an opportunity to review the above-described status report, a conference will be promptly convened so that further proceedings may be ordered.

IT IS SO ORDERED.

/s/ John W. Oliver
John W. Oliver
Senior Judge

## ORDER

### March 16, 1987

On March 13, 1987, a further pretrial conference was conducted in the above-styled case. At that conference, the general status of the case was fully discussed.

In light of the discussion at the conference, the parties agreed to present to the Court for its approval, on or before April

15, 1987, papers that will expedite the ultimate disposition of this case.

Accordingly, it is

ORDERED that the parties present to the Court for its approval papers providing for the ultimate disposition of this case on or before April 15, 1987.

s                          /s/ John W. Oliver
                           John W. Oliver
                           Senior Judge

## CONSENT DECREE

Upon the joint motion of the parties, it is hereby Ordered, Adjudged and Decreed that:

## I.  INTRODUCTION

1.  Plaintiffs filed a motion for contempt on October 27, 1986.  The parties have agreed to settle that motion by this consent decree.

2.  Defendants admit and concede that they are in violation of the Order of this Court entered on May 2, 1980 as amended on June 26, 1981 in the Jackson County office of the Division of Family Services (DFS) for the calendar months of June, July, August and September 1986.

3.  The parties agree that the applicant for Aid to Families with Dependent Children (AFDC) has the burden to establish eligibility for AFDC.

4.  The parties agree the Division of Family Services (DFS) is responsible for providing assistance to the applicant applying for AFDC and processing the application in a timely fashion.

## II.  STATE–WIDE PROCEDURES

The Division of Family Services shall implement on a state-wide basis policies and procedures to ensure the timely and proper processing of AFDC applications including, but not limited to the following provisions. The provisions of this decree shall not apply to the City of St. Louis, Missouri.

*Determination of AFDC Eligibility for AFDC Applications:*

5.  At the time of the initial interview, the caseworker, with the assistance of the applicant, shall attempt to determine all information needed to process the applicant's AFDC application.

6.  The caseworker at the time of the initial application interview shall notify the applicant of the information that the caseworker believes is needed to determine eligibility in a clear, and understandable manner.  The AFDC application cannot be placed on client delay on the basis of the applicant's failure to supply the requested information unless prior notification of the information needed was made to the applicant in writing.

7.  At the time of the applicant's initial interview, the caseworker shall give to the applicant a written notice explaining the time limits the Division will use to determine eligibility and to issue an AFDC check.  This notice shall explain to the applicant in clear, understandable language the applicant's responsibility to furnish information and the caseworker's responsibility to assist the applicant and process the AFDC application timely.  The notice to the applicant shall explain any delay determination that the DFS may make in an applicant's AFDC case, the action the DFS may take as a result of the delay determination, and shall advise the applicant that they may request an administrative review to contest any adverse determination on a delay in processing of the application.

8.  At the time of the initial interview, the caseworker shall have the applicant complete or sign forms which are determined to be needed in order to obtain information or establish eligibility for AFDC benefits.

9.  During the processing of the AFDC application, the caseworker shall offer assistance to the applicant in acquiring information to determine eligibility if the applicant is experiencing difficulty in obtaining the information, and the caseworker is informed of the difficulty by the applicant or designated representative.

10. The caseworker shall not request information from the applicant when the caseworker is aware of and has ready access to reliable information.

11. Forms used by the caseworker to obtain information regarding the applicant's eligibility for AFDC shall be mailed or delivered on the date recorded on the form or the next calendar day to the proper party.

12. All forms, letters, and any correspondence to the applicant necessary to an AFDC application shall be mailed on the date noted on the document or not later than the next calendar day.

13. All documents or correspondence received by the Division of Family Services related to the AFDC application shall indicate the date received.

14. DFS shall not delay the processing of the AFDC application due to the failure of the applicant to provide information necessary for a Food Stamp application, if the information has no bearing on the AFDC application.

15. All verbal contact with the applicant and with "collaterals" or other resources shall be documented in the case file, indicating the date of contact.

16. The caseworker shall only request from the applicant information which is needed to determine eligibility for public assistance or Food Stamp benefits.

17. The reason for a delay in processing an AFDC case must be clearly stated on forms specifically designated by DFS for this purpose.

18. The DFS will make a determination as to the reason for delay in processing an AFDC application by a date specified by the Division by regulation.

19. An application for AFDC benefits can be determined to be client delay only when the applicant is advised of the information necessary to determine eligibility by DFS under the procedures and methods described in this Decree, the applicant failed to supply information adequate to determine eligibility, and the applicant has had adequate time to supply the requested information. However, an application for AFDC can be determined client delay when the applicant has not had adequate time to supply the requested information but the reason the applicant did not have adequate time was because the applicant had: failed to advise the Division of eligibility information; withheld information from the Division which was pertinent to eligibility; failed to provide the Division with adequate documentation; failed to advise the Division of a change in circumstances affecting eligibility; or notified the Division of the change in circumstances at a time which did not allow the Division sufficient time to process the application within the time frames established by this Court Order.

20. No application can be rejected prior to the forty-fifth (45th) day solely because the applicant failed to supply information or failed to cooperate. However, if the applicant refuses to cooperate the application may be rejected prior to the forty-fifth (45th) day.

21. An application can be rejected on or before the thirtieth (30th) day only if the case is found ineligible on a specific factor of ineligibility or the applicant refuses to cooperate.

*Notification to AFDC applicant of application status:*

22. If a case is to be rejected because the applicant failed to provide information, the rejection letter shall state the information requested by the caseworker and not provided by the applicant, stating the regulation or policy supporting the DFS' action.

23. If the caseworker determines that the reason for a delay in processing the AFDC application was caused by the applicant, a written notice to the applicant shall be mailed by the Division. The notice shall advise the applicant in clear, understandable language the reason the caseworker determined client delay in the case and the right of the applicant to request an administrative review if they contest this determination within ten (10) calendar days. This notice shall advise the applicant that the caseworker determined the reason for the delay was the fault of the applicant and

to contest this determination, the applicant may: (1) request a personal meeting with a supervisor who will review the facts underlying the delay determination in the case; (2) respond in writing with a letter explaining the situation and the reasons they do not believe the delay was their fault; or (3) be available for a telephone call from the supervisor to discuss the reasons the applicant presents for it not being the applicant's delay.

24. In Jackson, Clay and Platte Counties, Missouri, this notice shall contain the telephone number of Legal Aid of Western Missouri and a statement that the applicant may contact Legal Aid for assistance if the applicant believes that their application is not being properly or promptly processed or the determination of delay is incorrect.

25. The notice specified in Paragraph 23 above, shall advise the applicant that a written decision shall be made by the supervisor within fifteen (15) working days from the day of the applicant's request if an administrative review is requested timely by the applicant. The notice shall further advise the applicant that they may request a fair hearing under the provisions and time limits prescribed in Section 208.-080 RSMo, instead of and in addition to an administrative review.

26. If the caseworker determines that the reason for delay in processing the AFDC case is due to agency delay, the caseworker shall send a notice to the applicant advising the applicant of this decision and explaining in clear, understandable language that final determination on the applicant's AFDC application has not been made by the Division. This notice shall explain to the applicant any additional information needed to process the applicant's AFDC application and any payment that will be issued to the applicant. If subsequent to this notice, the DFS determines that the applicant is not eligible, DFS may stop processing benefits for the applicant and shall advise the applicant of the new determination.

*Administrative review of client delay determination for AFDC applications:*

27. In those cases where an applicant requests an administrative review by the Division of Family Services' supervisory personnel, the supervisor shall decide whether the client delay determination as described in the notice was correct.

28. The decision of the supervisor after the administrative review shall be made not later than fifteen (15) working days after the applicant timely requests review. The Division is not required to grant any continuances at the applicant's request. If the Division denies a request by the applicant for a continuance of the administrative review, the supervisory personnel of the Division shall nevertheless make a written decision on the delay issue, and notice to the applicant shall be issued under the provisions set forth in this Consent Decree regarding administrative review.

29. A copy of the written decision of the supervisor shall be filed in the case record of the applicant; a copy shall be sent to the applicant, and a copy shall be forwarded to the State Office of the Division of Family Services. On a regular basis, but not less than once per month, the State Office shall forward to the attorneys for the plaintiffs, copies of written decisions of the supervisors after the administrative review.

30. In determining the issue of client delay, the supervisory personnel of the Division of Family Services shall review the specified reason for the delay, supporting documentation from the case record, and any oral explanations from the caseworker, and shall consider the applicant's correspondence, contact, or other statement from the personal meeting with the supervisor, if any.

31. If the decision of the supervisor reverses the decision of the caseworker on the issue of client delay, the applicant shall be notified by a written explanation and decision. This notice shall explain to the applicant that this is not a final determination of the applicant's eligibility for AFDC and shall advise the applicant of their continuing responsibility to provide verification of eligibility factors. This notice shall

explain to the applicant any additional information needed to process the applicant's AFDC application and that payments may be issued to the applicant. If subsequent to this notice, DFS determines that the applicant is not eligible, DFS may stop processing benefits for the applicant and shall advise the applicant of the new determination.

32. If the conclusion of the supervisor is that the delay in processing was caused by the applicant, the applicant will be advised in writing of the supervisor's written explanation and decision and advised in writing of their right to pursue a full fair hearing before a hearing officer appointed by the Director of the Division of Family Services under the normal procedures set forth in § 208.080 RSMo and within the normal time frames established by that statutory provision.

33. The state-wide provisions of this Consent Decree shall be implemented within ninety (90) calendar days of the signing of this Decree by the Court unless otherwise stated.

34. The state-wide provisions of this Consent Decree shall remain in full force and effect for three (3) years from the date this Decree is signed by the Court. At the end of this three year period plaintiffs may petition the Court to continue the state-wide provisions of this Decree. Upon motion of plaintiffs and considering the response of the defendants, the Court shall determine whether the state-wide provisions of the Decree shall remain in full force and effect for any period determined by the Court, shall be modified, or shall be removed.

### JACKSON COUNTY DFS OFFICE AFDC APPLICATION PROCEDURES

35. In addition to all of the portions of this decree which shall be fully enforceable on a state-wide basis, the following policies and procedures for AFDC applications shall apply to the County of Jackson, State of Missouri for a period of two years beginning ninety (90) days after the signing of this Decree by the Court, unless otherwise stated.

36. The caseworker must fully review the application form to determine that all questions have been answered and promptly request, at the completion of the interview, any identified additional information needed from the applicant at that time.

37. When relevant to AFDC eligibility, and determined to be needed, the applicant should be asked the place of the marriage, divorce, birth of children, etc. The agency shall use any computer or other available DFS resources containing reliable information, to which it has ready access, to verify eligibility factors which can be determined through these resources.

38. Any previous case file of the applicant readily available must be reviewed to determine if verification is already contained in the file of the county office of the Division. If information is in the case file, and the caseworker has reason to believe that the applicant will exhaust resources to obtain the same information, the caseworker shall promptly notify the applicant that the information is no longer needed.

39. Training shall be conducted after April 1, 1987 or within ninety (90) days of this Decree to ensure that the interviewers are aware of all eligibility factors and the type of information the Division can properly request from the applicant, necessary forms to be obtained, and types of verification which can be requested. New hires shall be similarly trained.

40. The AFDC applications of interviewers shall be routinely sampled and reviewed to determine: (1) the interviewer has properly assisted the applicant in filling out the application; (2) the interviewer has obtained all forms which could be obtained at the time of the interview; and (3) the interviewer has requested verification items from the applicant in a clear, understandable manner, which are the applicant's responsibility to provide the Division.

41. Training shall be provided to processing caseworkers in Jackson County after April 1, 1987 or within ninety (90) days of this Consent Decree so that verification request letters are written for information

needed in enough detail, legible and in a language the applicant will understand. The caseworker must be sensitive to the applicant's level of understanding and make clear what the applicant is required to do and what assistance the caseworker will provide to the applicant. New hires will be similarly trained.

42. If documents in the case file of an AFDC applicant do not indicate a date received, it will be presumed the documents were timely received.

43. A case cannot be put on client delay when the agency has failed to make a home visit, and a home visit is the reasonable and appropriate method to resolve the eligibility factor.

44. The form used as an acknowledgement of fraud provisions should never be used to request eligibility verification from an applicant.

45. The caseworker must clearly explain the information needed to the AFDC applicant. The caseworker must request eligibility verification from the applicant in a legible, clear and understandable manner giving examples of verification that may be acceptable, if appropriate.

46. A copy of all correspondence, forms and other documentary evidence pertinent to the applicant's current AFDC eligibility shall be retained or timely recorded by DFS in the case file or computer files of the applicant for AFDC.

47. An applicant shall not be asked to verify that their AFDC case has been closed in another state when they have indicated that they do not have correspondence verifying the closure. The caseworker shall promptly send an IM–41 or other appropriate request form with a release, if necessary, to the other state requesting the verification.

48. The applicant shall have access, throughout the DFS working day, to their caseworker or supervisor. The Jackson County office shall not have a policy establishing any "protected time" during which an applicant is denied access to their caseworker, or in the alternative, a supervisor.

49. When a caseworker requires a statement from a third party to verify an eligibility factor, it shall not be routinely required that this statement be notarized.

50. The caseworker shall call, if necessary, to verify eligibility factors when possible.

51. The caseworker shall, if possible, use the insurance policy if they are unable to obtain verification of the cash surrender value of an insurance policy through the insurance company, and the policy appears to be an accurate reflection of the actual value of the policy.

52. The applicant shall be required to cooperate in establishing paternity, obtaining support and verifying the absence of the parent from the home as mandated by federal regulations. The applicant cannot be required to give the absent parent's social security number, his/her address, pieces of his/her mail, place of employment, date of birth, or other information, unless there are facts or circumstances which indicate that the applicant may have this information or access to it.

53. When possible, the caseworker shall require the applicant to supply collaterals who have telephones and are available during the day. When necessary, the applicant may provide acceptable collaterals, who can only be contacted in writing.

54. An application for AFDC benefits cannot be rejected between the thirtieth and forty-fifth day on the basis of loss of contact, unless DFS correspondence has been returned to the Division by the post office.

55. The caseworker shall not ask the applicant for information which has already been received by DFS. The caseworker shall review information received from the applicant or other sources and contained in the case file and shall promptly advise the applicant of any additional information needed or questions which have arisen from review of such information.

56. Before placing an application on client delay, it is necessary that deadline letters be sent requesting needed information. The first letter shall be given or sent

to the applicant by the interviewer at the time of the application. At minimum, a second letter shall be sent reminding the applicant of those items still needed, while allowing the applicant adequate time to supply the information requested, prior to the date designated to make the determination of presumptive eligibility.

57. When a case has been placed on client delay, the case shall be reviewed on a continuous basis and prompt action taken to process the application as soon as the applicant provides the information which delayed the application.

58. Supervisory personnel at the Jackson County office shall review AFDC case processing on a continuing basis to ensure presumptive eligibility guidelines are properly followed and caseworkers are properly implementing the Court's Order and this Consent Decree.

59. In Jackson County, Missouri, supervisory personnel of the Division of Family Services shall perform a preliminary review in each and every case where a determination of client or medical delay has been made. This preliminary review shall be performed by supervisory personnel at Jackson County DFS regardless of any request by the applicant for the administrative review. After this preliminary review the notice required by Paragraphs 23 through 26 shall be sent to the applicant. The Jackson County Office of DFS shall advise plaintiffs in writing on a monthly basis each case reviewed by the name of the applicant, the type of delay (medical or client), and the supervisor's determination as to the type of delay after the preliminary review. Plaintiffs shall upon request be allowed to review any case record included in the preliminary review within the provisions of Paragraphs 65, 66, and 68.

60. Within ninety (90) days of the signing of this Consent Decree, all AFDC caseworkers and supervisors shall be notified in writing of all official state-wide procedures of the DFS pertaining to this Consent Decree.

## IV. REPORTING REQUIREMENTS

61. The defendant DFS shall continue to supply to plaintiffs the reports (*Thompson* reports) ordered by the Court in its final judgment.

62. In addition to the *Thompson* reports specified above, defendants shall send to the attorneys for the plaintiffs a listing of all cases pending state-wide at the end of a *Thompson* reporting period. This reporting requirement shall be in effect for three years from the date the Court signs the Consent Decree. The parties acknowledge that this special list includes cases previously reported on the Thompson report with no final disposition indicated.

63. In addition to the report specified above, for three (3) years from the date the Court signs the Consent Decree, defendant shall supply to plaintiffs reports for each county in the state indicating the total number of applications per county, the total number of applications per county marked client delay with a percentage of applications thereof; the number of applications for county marked agency delay, with the percentage of applications thereof; the number of cases per county with no coding indicated, though checks were mailed or a decision reached after the forty-fifth day; and the number of cases per county coded medical delay with the percentage of applications thereof.

64. For Jackson County, Missouri for the next two years, defendants shall provide to plaintiffs on a monthly basis a report which shall describe the caseworker by name, their supervisor, the number of AFDC cases pending on the date the report is completed, new cases added since the last report, and the number of cases resolved since the last report. The report shall state the number of delay cases and whether or not the delay is client, agency, or medical delay for each caseworker.

## V. MONITORING

65. Upon reasonable notice, the Jackson County Office of DFS shall make available

to attorneys for plaintiffs, or their representatives, case files randomly selected by the plaintiffs or delineated by the plaintiffs for review for purposes of monitoring AFDC applications processing timeliness and the use of presumptive eligibility guidelines within a reasonable time after request.

66. If attorneys for the plaintiffs request five or less case files from the Jackson County DFS office, the files shall be made available within sixteen (16) working hours.

67. Upon reasonable notice, the State office of the DFS shall make available to the attorneys for the plaintiffs any case files selected by plaintiffs or their representatives state-wide for purposes of monitoring AFDC application processing timeliness and the use of presumptive eligibility guidelines.

68. Attorneys for plaintiffs shall only ask for a reasonable number of case files for review.

69. A management team selected by the State Office of the Division of Family Services has commenced the review and evaluation of Jackson County DFS office policies, practices, procedures and staffing related to the processing of AFDC applications and the use of presumptive eligibility guidelines.

70. With respect to the Jackson County DFS office, a statement of findings compiled by the on-site section of the management team will be reviewed by the DFS state evaluators and recommendations drafted, after the Jackson County Office of DFS is given the opportunity to rebut or accept the recommendations. The recommendations will then be presented to the plaintiffs' attorneys for their review and recommendations. The evaluators will then meet with plaintiffs' attorneys in order to discuss the development and drafting of directives to be issued by the State Office to the Jackson County DFS office in order to ensure the timely processing of AFDC applications and compliance with this Court's Order and Consent Decree.

## VI. GENERAL PROVISIONS

71. The parties specifically agree that this Consent Decree does not replace in any manner the Court's final order entered on May 2, 1980, as amended June 26, 1981. This Consent Decree is meant by the parties to supplement the Court's Order and to clarify, define and establish additional processing procedures to be used by the defendants.

72. The parties specifically agree that this Consent Decree does not encompass resolution of the appropriateness of a fine under Plaintiffs' Motion for Contempt. The parties agree to submit the matter of the fine requested by plaintiffs and the attorney's fees requested by plaintiffs to the Court for a final determination.

73. This Consent Decree does not bar, by res judicata, collateral estoppel, or any other doctrine of claim or issue preclusion, any claim for damages by any individual as a result of defendants' conduct.

74. Within thirty (30) days from the entry of this Consent Decree, plaintiffs shall submit to defendants a proposed stipulated record including stipulations of fact, depositions previously undertaken, and any stipulated documentary evidence upon which the remaining issues of fines and attorney's fees shall be resolved. Thereafter, defendants will respond to the proposed record within sixty days. If the parties are unable to agree upon the stipulated record, the Court will direct further proceedings to resolve the remaining issues.

75. Within thirty (30) days from the filing of the stipulated record, the plaintiffs shall submit a brief in support of their position. Defendants shall file a response within forty-five days of receipt of plaintiffs' brief.

76. Within forty-five (45) days from the Court's decision on fines, plaintiffs shall file their Motion and affidavits in support of the request for attorney's fees. Defen-

dants shall file their opposition, if any, within thirty days from the filing of plaintiffs' request. Defendants may file a brief in support of their position. Within fifteen days from filing, plaintiffs may file a response to defendants' brief.

77. A copy of the initial Order entered herein on May 2, 1980, this Consent Decree, and any supplemental order entered by the Court shall be given by defendants to all present Income Maintenance supervisory personnel in the Jackson County DFS office and every present County DFS Director in the State of Missouri.

78. The attorneys for plaintiffs shall be given copies through the regular agency mailing system of any official policies and procedures issued by the State Office of the Division of Family Services, to implement the Court's Order and this Consent Decree.

79. Jurisdiction is retained by this Court for the purpose of enabling any of the parties to apply to this Court at any time for further orders and directions as may be deemed necessary or appropriate for carrying out this Consent Decree, and the judgment entered by this Court on May 2, 1980 for the amendment or modification of any of the provisions hereof, for the enforcement of compliance therewith, or for the punishment of violation thereof.

/s/ William Siedhoff
William Siedhoff, Director
Division of Family Services

/s/ Effie F. Day
Effie F. Day
Attorney for plaintiffs
Legal Aid Western Missouri
600 Lathrop Building
1005 Grand Ave.
Kansas City, Mo. 64106
(816) 474-6750

/s/ James Marshall Smith
James Marshall Smith
Attorney for plaintiffs
Legal Aid Western Missouri
600 Lathrop Building
1005 Grand Ave.
Kansas City, Mo. 64106
(816) 474-6750

/s/ Paul T. Keller
Paul T. Keller
Attorney for defendants
Department of Social Services
Division of Legal Services
P.O. Box 1527
Jefferson City, Mo. 65102
(314) 751-3229

Approved and entered by this Court on April 30, 1987.

It is so ORDERED.

/s/ John W. Oliver
John W. Oliver
Senior Judge

Mabel Thompson, et al., Plaintiffs,

vs.

Michael Reagen, et al., Defendants.

Civil Action No. 75CV494-W-B-1

In the United States District Court for the Western District of Missouri Western Division

STIPULATION

Come now parties, by and through undersigned counsel, and hereby stipulate and agree as follows:

On April 30, 1987 the parties entered into a Consent Decree resolving the plaintiffs' Motion for Contempt filed October 27, 1986. The Consent Decree resolved all issues except the question of attorney's fees which may be due to plaintiffs and whether or not a penalty should be imposed on defendants for contempt.

The parties have now resolved these issues. Defendants have agreed to pay and have paid plaintiffs the sum of $59,525.25 attorney's fees. In addition, plaintiffs withdraw any requests that defendants be fined or otherwise subjected to a penalty in addition to the Consent Decree entered into previously.

Respectfully submitted,

/s/ Effie F. Day

Effie F. Day
Legal Aid of Western Missouri
600 Lathrop Building
1005 Grand Avenue
Kansas City, Missouri 64106–2216
(816) 474–6750
Attorney for Plaintiffs

/s/ Paul T. Keller

Paul T. Keller
Division of Legal Services
Department of Social Services
P.O. Box 1527
Jefferson City, Mo. 65102–1527
Attorney for Defendants